Frank J. Mackey and another *vs.* Elijah A. Harmon and Wife.

October 1, 1885.

Covenant against Incumbrances—Breach—Easement of Party-wall.— Hurlburt and Harmon, owning adjoining lots, executed a written instrument, under seal, duly acknowledged and recorded, wherein it was agreed that Hurlburt might build a wall on the dividing line between the lots, one-half of the same and its footings to stand upon Hurlburt's land, and one-half on Harmon's, and that Harmon, his heirs and assigns, should have the right to join and use the wall, provided that, before making any use thereof, they should pay Hurlburt, his heirs and assigns, one-half of the value of so much of its length as should be joined to or used. Either party was permitted to extend the wall, and to use any extension on like terms; and provision was made that the expense of rebuilding or repairing it should be borne equally as to so much as was jointly used. The agreement was also made perpetual, and a covenant running with the land. Hurlburt erected a wall pursuant to the agreement. Subsequently Harmon conveyed his lot "with all the hereditaments and appurtenances thereunto belonging, or in any way appertaining," to plaintiff Mackey, by deed containing covenants against incumbrances, and for quiet enjoyment; and Mackey conveyed an undivided half of the same, with like covenants, to plaintiff Legg. To enable them to erect a building on their lot, plaintiffs paid Hurlburt $850, being the value of so much of the wall as they used. *Held,* that the written instrument

vested in Hurlburt, his heirs and assigns, an easement appurtenant to his lot in so much of Harmon's lot as would be covered by the wall, and that such easement was an incumbrance upon Harmon's lot, and its existence, at the time of the conveyance to Mackey, a breach of Harmon's covenant against incumbrances.

**Same—Measure of Damages.**—*Held, further,* that plaintiffs being entitled, as of course, to nominal damages, at least, for this formal breach of the covenant, the measure of their actual damages is compensation for the depreciation in value of their land by reason of the incumbrance. This depreciation is to be ascertained by reading the agreement as a whole, and considering that while it confers upon Hurburt's land an easement in plaintiffs' land, it in the same breath confers upon plaintiffs' land a like and equal easement in Hurlburt's land, so that the question is, when Harmon executed the deed to Mackey, how much less was plaintiffs' lot worth with the mutual easements or servitudes created by the written instrument, as a whole, than it would have been without them?

Plaintiffs brought this action in the district court for Hennepin county to recover damages for an alleged breach of a covenant against incumbrances contained in a warranty deed. The incumbrance claimed to exist is a party-wall agreement, and plaintiffs seek to recover as damages the sum of $850, the amount paid by them for the right to use a party-wall situated, in part, on the premises conveyed by the warranty deed.

The action was tried by *Lochren,* J., without a jury, and upon the facts as found by him, which are recited in the opinion, judgment was ordered for plaintiffs for the full amount claimed. The conclusions of law on which judgment was ordered, were (1) that the right acquired by Hurlburt, under the party-wall agreement, to build half of the wall on Harmon's land is an easement upon so much of Harmon's land as is covered by the wall; (2) that by the same agreement Harmon acquired "a corresponding and compensating easement" in so much of Hurlburt's land as is covered by the same wall, and "the mutual easement appurtenant to each parcel was beneficial to each, and did not constitute such an incumbrance as would be any breach of the covenant against incumbrances, as no damage could result from the mutual easements to the owner of either parcel; (3) that

the adjoining owners did not by virtue of the agreement own in common the land covered by the party wall, but each owned in severalty to the former line in the centre of the wall, and each owned in severalty so much of the wall as stood upon his own land, subject to the easement for support and maintenance, the half standing on Harmon's land "being subject also to the incumbrance, under the party-wall contract, that its value must be paid by its owner to the adjoining proprietor who built it, before its owner should have the right to use it," and (4) that the half of the party wall on Harmon's land passed by defendants' deed to Mackey, but it was subject to such incumbrance, and could not be used without payment of its value to Hurlburt, and that this was an incumbrance affecting the value, use and enjoyment of a part of the premises conveyed, and its existence was a breach of defendants' covenant against incumbrances.   Defendants appeal from an order refusing a new trial.

*Woods & Hahn,* for appellants, on the point that "the mutual easement appurtenant to each parcel was beneficial to each," cited, *Zugenbuhler* v. *Gilliam,* 3 Iowa, 391; *Bertram* v. *Curtis,* 31 Iowa, 46; *Hendricks* v. *Stark,* 37 N. Y. 106; *Musgrave* v. *Sherwood,* 54 How. Pr. 338; *Mohr* v. *Parmelee,* 43 N. Y. Super. Ct. 320.

*Chas. P. Biddle,* for respondents.

Berry, J.   The following facts are found by the court by which this action was tried below:

One Hurlburt and defendant Harmon, owning adjoining lots on Nicollet avenue, Minneapolis, executed a written instrument, under seal, wherein it was agreed that Hurlburt might build a stone or brick wall on the dividing line between the lots; one-half of the wall and its footings to stand upon Hurlburt's lot and one-half on Harmon's, the wall to be 66 feet in length (the full depth of the lots) and 60 feet high, and that Harmon, his heirs and assigns, should have the right to join and use the wall and sink joist and timbers therein, provided that, before making any use thereof or breaking into it, they should pay Hurlburt, his heirs or assigns, one-half of the value of the wall, or one-half of the value of so much of its length as should be joined to or used.   The instrument further provides for the exten-

sion of the wall by either party, and for the use of the extension by the other upon like terms as above, and also, that if it becomes necessary to rebuild or repair it, the expense of repairing or rebuilding shall be borne equally by the parties as to so much of the wall as is jointly used. And it further provides that the agreement shall be perpetual, and shall at all times be construed as a covenant running with the land.

The instrument was duly acknowledged and recorded. Hurlburt erected a wall upon the dividing line mentioned, in accordance with the terms of the agreement. Subsequently Harmon conveyed his lot, "with all the hereditaments and appurtenances thereunto belonging, or in any way appertaining," to plaintiff Mackey, by a deed containing covenants against incumbrances and for quiet enjoyment, and Mackey conveyed an undivided half of the same, with like covenants, to plaintiff Legg. To enable them to use that part of their lot covered by the wall, plaintiffs have, under the agreement, been obliged to pay and have paid Hurlburt one-half of the value of so much of the length of the wall as they have used in the erection of a building upon their lot, to wit, the sum of $850.

Plaintiffs contend that the agreement conferred upon Hurlburt, his heirs and assigns, an easement in their lot, and that such easement and the wall are an incumbrance upon their lot; that their quiet possession and enjoyment of so much of the same as is covered by the wall are thereby interfered with and prevented; and that therefore the covenants against incumbrances and for quiet enjoyment are broken, and they are entitled to damages in the sum which they have been obliged to pay to enable them to use so much of their lot as is covered by the wall, to wit, $850, with interest from the date of its payment.

The trial court found, as a conclusion of law, that the agreement vested in Hurlburt, his heirs and assigns, an easement appurtenant to his land in so much of Harmon's (now plaintiffs') land as would be covered by the wall. This conclusion is supported by *Warner* v. *Rogers*, 23 Minn. 34, where an easement is defined "to consist of a right in the owner of one parcel of land by reason of such ownership to use the land of another for a special purpose not inconsistent with

a general property in the owner," and where it is further held that such easement is an incorporeal hereditament, an *interest* in the servient estate. An incumbrance is defined to be a right or interest in a third person in land to the diminution of its value. 2 Greenl. Ev. § 242; Rawle on Covenants, 94; *Fritz* v. *Pusey*, 31 Minn. 368.

For a second conclusion of law, the trial court found that, as Harmon acquired for himself, his heirs and assigns, an easement appurtenant to his land in so much of Hurlburt's land as the wall would cover, which easement was like and equal to that acquired by Hurlburt in Harmon's land, "the mutual easement appurtenant to each parcel was beneficial to each," and hence did not constitute a legal incumbrance. This conclusion appears to be supported, to some extent at least, by *Hendricks* v. *Stark*, 37 N. Y. 106, and *Mohr* v. *Parmelee*, 43 N. Y. Super. Ct. 320; two cases cited by the trial court.

But in our judgment the second conclusion of law is not sound. The easement in the plaintiffs' land in favor of and appurtenant to Hurlburt's is *a right or interest in a third person* in the former to the diminution of its value, and therefore an incumbrance within the authoritative definition before given. The existence of the incumbrance does not depend upon the extent or amount of the diminution in value. If the right or interest of the third person is such that the owner of the servient estate has not so complete and absolute an ownership and property in his land as he would have if the right or interest spoken of did not exist, his land is, in law, diminished in value and incumbered. It follows that in the case at bar the existence of the right in plaintiffs' land conferred upon and as appurtenant to Hurlburt's land was an incumbrance, and that therefore the covenant against incumbrances in Harmon's deed to plaintiff Mackey is broken.

This brings us to the question of damages. The incumbrance in this case, that is to say, the servitude to which plaintiffs' land is subjected, has not been *removed*, and it is not in the power of plaintiffs to force its removal, as it would be if the incumbrance were a matured mortgage. Only by the *consent* of Hurlburt or his successors in interest can the servitude be purchased in or in any way discharged. The case is, then, one in which the necessary measure of damages is compensation for the depreciation in value of plaintiffs' land occa-

sioned by the incumbrance. *Fagan* v. *Cadmus*, 46 N. J. Law, 441. The agreement between Hurlburt and Harmon is to be read as a whole. So read, while it confers upon Hurlburt's land an easement in plaintiffs' land, it in the same breath confers upon plaintiffs' land a like and equal easement in Hurlburt's land. As respects actual damages, the plaintiffs are therefore entitled to such sum as will compensate them for the depreciation in the value of their land occasioned by the agreement as a whole. The question is, when Harmon executed the deed to Mackey, how much less was plaintiffs' lot worth with the mutual easements or servitudes created by the agreement as a whole, than it would have been without them? The plaintiffs are, of course, entitled to nominal damages, at least, for the formal breach of the covenant against incumbrances.

This appears to us to be all that is requisite to be said in the case, and to render it unnecessary to consider many of the suggestions of counsel, none of which have, however, been overlooked.

The order refusing a new trial is reversed, and a new trial directed for the purpose of ascertaining the plaintiffs' damages.