ROBERT CROWLEY and Wife v. C. N. NELSON LUMBER COMPANY and Others.[1]

December 8, 1896.

Nos. 10,175—(91).

Deed—Delivery to Real Purchaser—Conveyance by Grantee—Knowledge of Grantor.

Where a grantee named in a deed subsequently conveys in due form the land described, it is immaterial that the deed was executed without his knowledge, and was not actually delivered to him, but was delivered to the party who actually purchased the land and procured the execution of the deed in which he was named as grantee. He acquiesces and assents to the transaction by his subsequent conveyance. Nor is the validity of the deed to him affected by the fact that his grantor had no knowledge, when executing and delivering the same, that the real purchaser was not named as grantee therein.

Covenant against Incumbrances—Wife's Contingent Interest.

A contingent right of dower is an incumbrance on land previously conveyed by the husband alone, within the covenant against incumbrances;

[1] Reported in 69 N. W. 321.

and this rule has not been changed by the fact that estates in dower eo nomine have been abolished, and there has been substituted in this state, in lieu thereof, a life estate in the homestead of the husband, and title in fee to an undivided one-third of other lands.

### Same—Non-Joinder of Wife—Obligation of Grantor.

The obligation to remove this incumbrance remains upon a husband who has sold, and by deed with full covenants of warranty has conveyed, lands, without having his wife join in the execution of such conveyance.

### Same—Subsequent Deed—Fraud.

When a party to whom such lands have been subsequently conveyed secures the execution and delivery of another deed from the husband, in which his wife joins, the transaction is not to be treated as a purchase of the land; and the rules of law respecting fraudulent representations or concealments in such a purchase have only a limited application to it.

### Same—Cancellation—Findings Sustained.

*Held*, in this action, which was brought by a husband and wife to set aside a quitclaim deed made by them to one of the defendants, upon the ground of fraudulent representations and concealments, that findings of fact to the effect that the husband had previously sold, and by deed containing full covenants of warranty (in which deed the wife did not join) had conveyed, the land in question to a third party, who subsequently sold and conveyed the same to such defendant; and, further, that no reason had been shown for setting aside the quitclaim deed,—were warranted by the evidence.

Appeal by plaintiffs from orders of the district court for St. Louis county, Morris, J., denying motions to amend findings and for a new trial.    Affirmed.

*H. H. Hoyt* and *T. E. Tarsney*, for appellants.

*Warner, Richardson & Lawrence* and *Draper, Davis & Hollister*, for respondents.

COLLINS, J.    This action was originally brought against defendants C. N. Nelson Lumber Company, the Chicago & Minnesota Ore Company, and the Wyoming Iron Company, corporations, for the purpose of setting aside a deed of conveyance of the land in controversy, —160 acres,—executed and delivered by plaintiffs, husband and wife, to defendant Lumber Company, on the ground that it was procured by fraudulent representations and concealments.    There were no allegations in the complaint that the Ore Company or the Iron Company

66 M.—26

were parties to the fraud; the only averment in reference to them being that each claimed to own or to have some interest in the land. After these defendants had answered, plaintiffs procured an order bringing the Auburn Iron Company, another corporation, into the case as an additional defendant,—not as a party to the alleged fraud, but as claiming to be the owner or having an interest in the land.

The allegations in the complaint as to the procurement of the deed, in which plaintiffs were grantors and the Lumber Company grantee, by fraudulent practices, were put in issue by the answers filed by each of the defendants. The Lumber Company further alleged that on February 16, 1882, plaintiff Robert Crowley, then a resident of the state of Minnesota, had duly entered and purchased this land from the general government, in accordance with the provisions of the pre-emption act, and had become the equitable owner of the same; that on February 20, 1882, said Crowley, for a valuable consideration, namely, $500, sold the land to defendant Lumber Company, and on the same day duly executed, acknowledged, and delivered to one David McIntosh, for the use and benefit of the company, a deed of conveyance thereof, which was duly recorded in the office of the register of deeds for the proper county on March 1 of the same year. It was further alleged that on May 20, following, McIntosh, for a valuable consideration, duly executed, acknowledged, and delivered his deed of that date, whereby he duly sold and conveyed the land in question to the Lumber Company, which deed was duly recorded May 26, 1882. A copy of each of these deeds was attached to the answer, from which it appeared that each contained full covenants of warranty. A copy of the deed alleged to have been procured by fraud was also made a part of the answer. It bore date December 5, 1893, was properly witnessed, and was duly acknowledged before a notary public, having a seal of office, in the province of Nova Scotia.

The answer of defendant Lumber Company, as well as separate answers filed by the other defendants, set out the execution and delivery of a number of mining leases and contracts relating to the land in question, all bearing upon the title and interest claimed by the defendants other than the Lumber Company. This company claimed to be the owner in fee simple, through the deeds before referred to, and averred that, at the time Robert Crowley conveyed to McIntosh, he was, in fact, a married man; that his wife, plaintiff Annie Crowley,

was not at the time, and never had been, a resident of the state of Minnesota, or of the United States; and that the deed of December 5, 1893, was executed and delivered by the Crowleys and obtained by the Lumber Company for the sole purpose of completing its title to the land, and curing the defect which existed by reason of her failure to join in the execution of the deed in which McIntosh was grantee. Replies were interposed to the answers, in which it was denied that on the day mentioned in the year 1882, or at any time, Robert Crowley had sold the land to the Lumber Company, or had conveyed it to McIntosh or to any other person, or that McIntosh had at any time conveyed it to the company or to any one else.

The issues made by these pleadings, on which the case was tried by the court without a jury, were well defined, and may be thus stated: First. Did plaintiff Robert Crowley sell the land to the Lumber Company in 1882, and execute and deliver the warranty deed, bearing date February 20 of that year, in which McIntosh was named grantee? Second. Did McIntosh execute and deliver the warranty deed, dated May 20, 1882, in which the Lumber Company was named as grantee? And, third, was the deed executed and delivered by plaintiffs, December 5, 1893, in which the company was grantee, procured by means of fraudulent representations and concealments?

At the trial defendants' counsel offered in evidence a deed, containing full covenants of warranty, bearing date February 20, 1882, in which Robert Crowley was sole grantor and David McIntosh was grantee, in which was described and conveyed in fee simple the tract of land involved in this action. This instrument was executed and acknowledged before a notary public of this state in the manner prescribed by law, and, without further proof, was admissible in evidence, under the provisions of G. S. 1894, § 5759. This disposes of the assignment of error based upon the admission of this instrument in evidence, over plaintiffs' objection, without further proof of its execution.

Counsel also introduced in evidence a deed, of date May 20, 1882, purporting to have been executed and delivered by McIntosh, as sole grantor, to the Lumber Company, as grantee, describing and conveying the land in question to the latter with full covenants of warranty. This deed was also executed and acknowledged within this state, in accordance with the laws thereof, and, without further proof, was also admissible in evidence.

Both parties then introduced evidence in relation to the execution and delivery of these deeds. The testimony of Robert Crowley, who appeared as a witness, was an attempted denial of the execution or delivery of the deed in which he was named as grantor, while McIntosh, also a witness, denied that he knew of the execution of this deed, in which he was named as grantee, or that he ever received it, or that he at any time conveyed the land therein described to defendant Lumber Company. This included a positive denial that he executed or delivered the deed of May 20, 1882, in which he was named as grantor, and the company as grantee. The object of this testimony was to rebut and overcome the effect of the admission in evidence of what purported to be the original conveyances, and this is authorized by the provisions of section 5759, supra. Evidence on this point was also introduced by defendants. We need not state what it was, but from an examination of it, including the cross-examination of Crowley and McIntosh, we are not only convinced that the trial court was right when finding, as facts, that Crowley sold the land in February, 1882, to the Lumber Company, for a valuable and adequate consideration, paid to him by it; that on the 20th day of that month he duly executed, acknowledged, and delivered the deed, with full covenants of warranty, in which McIntosh was grantee; that this was done at the instance and request of the purchaser; and that thereafter, May 20, 1882, McIntosh duly executed, acknowledged, and delivered the deed to the purchaser Lumber Company, in which it was named as grantee,—but that any finding in opposition to these would have been against the decided weight of the evidence.

It is argued by counsel that, in any event, the Crowley deed conveyed nothing because the grantor did not know that McIntosh was named as grantee, and, again, because it was never delivered to the latter, it being shown that it never came into his actual possession. That McIntosh was named as grantee in the deed, Crowley being in ignorance of the fact, was of no consequence. Crowley might have insisted upon the name of the real purchaser being inserted as grantee, but the validity of his deed is not affected by the fact that it was not. The conveyance was not invalid because the name of a third party was inserted before its execution. It is also true that a deed must be delivered before it takes effect. But here was delivery to the actual purchaser. If McIntosh, then, chose to convey the land described to

the Lumber Company while the deed was in its possession, as he did, he acquiesced in and assented to all that previously transpired, and the conveyance operated precisely as if he had knowingly been a party to all that had been done, and had actually received the Crowley deed in his own hands.

Counsel for plaintiffs dispose of a number of their assignments of error, in relation to the admission in evidence of a number of exhibits, quite summarily in their argument. We are of the opinion that the court did not err in its rulings, and that it is clearly unnecessary for us to discuss any of these assignments. And, obviously, the court ruled correctly when it refused to permit the witness McIntosh to state what occurred between the witness Gowan and himself when they met in the western country.

This brings us to a consideration of the appellants' main contention, that the court was not warranted in finding, as a fact, that the quitclaim deed from them to defendant Lumber Company, of date December 5, 1893, was obtained without fraud, and was and is a valid deed of conveyance of the land in question. This is equivalent to asserting that the evidence required a finding that this deed was obtained by fraudulent representations or concealment, on which there should be based an order for judgment setting it aside. We cannot agree with counsel.

At the outset, it is well to state that, when Crowley conveyed this land, in 1882, and for many years afterwards, it was supposed to be principally valuable for the pine timber then growing thereon. But later, and a few years prior to 1893, there was discovered upon it one of the richest deposits of iron ore ever found in that section of the country, and it became immensely valuable. This led to a close scrutiny of the title by the Lumber Company, and the discovery that Crowley was a married man when he conveyed to McIntosh. Further investigation disclosed that his wife was still living, both residing near Sidney, Province of Nova Scotia. A quitclaim deed of the land was then prepared, and the witness Gowan sent by the company to Sidney to secure its execution by Crowley and his wife. As to what occurred then, what was said and done by and between the parties, the trial court had the right to accept the version given by Gowan, and reject that of plaintiffs; although this may not be very material, in view of the fact, which is important, that Crowley had already sold,

and by warranty deed conveyed, the land, and the only object in procuring the quitclaim was to perfect the title, affected, as it was, by the circumstance that Crowley was a married man when he deeded, and that his wife had not joined in the deed.

According to Gowan's version, he first met Crowley on the street in Sidney, and recognized him, they having been acquainted in 1882. After a little general conversation Gowan told Crowley what his purpose was in visiting Sidney, reminded him of the fact that Mrs. Crowley had not signed the original conveyance, and informed him that he came to obtain a quitclaim deed of the property. Crowley expressed a willingness to have such a deed executed, and at his suggestion a certain notary public was secured to go to Crowley's house to take the acknowledgment. The notary and Gowan went together, arriving at the house before Mr. Crowley came in. There was more or less conversation between the notary and Mrs. Crowley before Mr. Crowley came in, but nothing was said about the deed. A lunch, prepared by Mrs. Crowley, was then eaten, and at the suggestion of the notary the parties proceeded to the execution of the deed. Gowan handed to the notary the quitclaim to be signed, and also the original deed from Crowley to McIntosh, telling him to compare the description to satisfy the Crowleys that they were the same. The notary spread both deeds on the table, made the examination, and assured the Crowleys that the land described was the same. Mr. and Mrs. Crowley then signed the deed, it was witnessed by two witnesses aside from the notary, the acknowledgment was taken, and the deed handed to Gowan. After this Crowley expressed a wish that Gowan go and look about the little place on which he was living, and also remarked that if Mr. Nelson (of the lumber company) had come himself to Sidney to obtain the deed he would have paid $30 or $40 for it. Gowan professed a willingness to pay, and handed $40 to Crowley, who immediately placed it in his wife's hands. This was the substance of what occurred when the deed was signed.

Gowan admitted that he said nothing about the discovery of iron on the land, and also that he stated to the Crowleys that the fire had run through a part of the land, and that it was in a dangerous location, the timber liable to burn, and that the company wanted the deed because the fires had run through the timber. He also admitted that he was asked if the land was valuable, to which he answered that all

land was valuable in that locality. It stood admitted upon the trial that little or no damage had been done to the timber by fire when Gowan procured the deed, although there was evidence tending to show that he had been informed that fire had run through and injured it quite considerably. Gowan also admitted that, when asked about his visit to Sidney, he told Crowley that he had business in New Brunswick in respect to an estate. From the evidence it appeared that he went from Minnesota to Sidney direct, and returned immediately, having no other business. His statements in reference to other business were misrepresentations, at least. So that the acts of omission or commission relied upon by appellants were that Gowan concealed from them the fact that the land in question had become immensely valuable, stated that the fire had run through it so as to injure the timber, and that for this reason the Lumber Company wanted a deed, and further misrepresented his reasons for being in that vicinity at that time.

Now, we are not required, as before intimated, to pass upon the facts in this case as if the transaction of December 5, 1893, was the first occurring between these parties. It is altogether different from an out and out purchase of the land by the Lumber Company upon that day, and the rules of law which would govern and control such a transaction have only a limited application here, and we need not discuss them. Crowley had, in 1882, sold, and by warranty deed with full covenants had conveyed, the land in fee simple. As to him the title was perfect in the company. Mrs. Crowley had an inchoate and contingent right in the land, which, in the event of her husband's death before her own, she not having assented in writing to a disposition thereof, would ripen into a title in fee in her to an undivided one-third, subject, in its just proportion with other real estate, to the payment of such debts of the deceased husband as were not paid from the personalty.

This right is of the same general nature as inchoate right of dower at common law. The right was not assignable. It had no real value. It depended upon a contingency, and the only thing the wife could do with it, when Gowan obtained the deed, was to relinquish it in writing to the company, then owner of the fee. It was an incumbrance, within the scope of the covenants in her husband's deed. An incumbrance, within the meaning of the covenant against incumbrances, includes

any right or interest in the land, which may subsist in third persons, to the diminution of the value of the land not consistent with the passing of the fee by the conveyance.    Fritz v. Pusey, 31 Minn. 368, 18 N. W. 94; Mackey v. Harmon, 34 Minn. 168, 24 N. W. 702.    A contingent right of dower is an existing incumbrance, within the covenant against incumbrances.    2 Scribner, Dower, § 3, and cases cited.    That estates in dower eo nomine have been abolished in this state, and in lieu thereof there has been substituted a statutory right to a life estate in the homestead of the husband, and to title in fee to an undivided one-third of all other lands, has not changed the rule.    If anything, it has made its expediency and necessity more apparent.    The obligation to remove this incumbrance devolved upon Mr. Crowley, the husband, and the right to enforce the obligation vested in the Lumber Company upon the execution and delivery to it of the McIntosh deed.    It remained so vested when Gowan procured the deed of December 5, 1893, and it had not been affected by the discovery of a rich mineral deposit on the land.    And the true character of the transaction at Sidney seems plain, from all of the circumstances, and from what the court had a right to find occurred there.

Gowan was not there, nor did he pretend to be, to purchase the land, for that had already been done.    Nor did either of the Crowleys so understand it.    There were no negotiations as to price,—no price agreed upon.    Nothing was said about payment of a purchase price, or of the payment of money, except as we have stated.    The $40 which Gowan handed to Crowley was in the nature of a gratuity.    Its payment was not exacted by the Crowleys, but was brought about by a remark which clearly indicated that the Crowleys knew that they had no valuable interest in the property to dispose of, and which was made after the deed had been executed and delivered to Gowan as the representative of the grantee.    It is obvious, from what was said and done, that Mr. and Mrs. Crowley well knew that Gowan had been sent to Sidney for the purpose of obtaining a deed to be executed by both of them, because Mrs. Crowley had not signed the one by which in 1882 Mr. Crowley had conveyed the land; the deed executed by him alone being then submitted for their inspection, and for comparison by the notary, that they might be assured that the land described was the same.

To sum it all up, it is evident that, as Crowley's execution of the quitclaim deed and the procuring of his wife to join in it were nothing more than he was bound to do by his covenants in the 1882 deed, any misrepresentations or concealments by Gowan as to the condition or value of the land could not have amounted, in law, to a fraud upon Crowley himself; and that Gowan was under no obligation to communicate to Mrs. Crowley anything as to the condition or value of the land; and, further, that in no event did the evidence require a finding by the court that Gowan made any false representations to Mrs. Crowley. For these reasons, the plaintiffs were not entitled to have the deed set aside.

Order affirmed.

CANTY, J. I concur, on the ground that Gowan's dealings were solely with Crowley, and his representations were made solely to Crowley; that he left Crowley himself to deal with Mrs. Crowley, who was a stranger as to the Lumber Company; and that it owed her no duty, and she owed it none, but what she did was, from the court's findings, done for her husband, and to relieve him from his covenants.