ELIZUR R. ENSIGN ET AL. *vs.* ELIZABETH H. COLT.

First Judicial District, Hartford, May Term, 1902.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

Upon the boundary line between lands of *C* and of *D* the former, with the latter's assent, erected a massive stone wall about eleven feet thick, which was intended, primarily, to protect the adjoining lands from injury by freshets, but incidentally served as a divisional fence, the middle line of the wall being on the dividing line. *C's* land was afterward conveyed in two parcels, the east part by deed excepting the wall and reserving the right to maintain it, and later the west part, to the plaintiffs, by a warranty deed which included the wall bounding this piece on the north, and also that part of the wall north of the east part which had previously been reserved, and describing the property as free from all incumbrances. By virtue of a contract executed with *C*, in which it was agreed that the wall should permanently remain, *D* subsequently procured an injunction forbidding the plaintiffs from removing any part of the wall. In an action by the plaintiffs against the devisee of *C*, for a breach of his covenant of warranty, it was *held* :—

1. That the plaintiffs became the absolute owners for all purposes of their half of the wall on the north of the western tract, together with the right to maintain the wall north of the eastern parcel.

2. That the judgment of injunction was an eviction of the plaintiffs as to a part of the western tract.

A judgment, the necessary effect of which is to deprive the plaintiffs of the power of beneficial enjoyment of a part of the granted premises, is a constructive eviction.

The right in one landowner to maintain such a wall on the land of another adjoining, while it may resemble the mutual rights which adjacent landowners have in respect to a party wall, is nevertheless an incumbrance, and a grantor who conveys land thus burdened, by warranty deed in which this incumbrance is not excepted, is liable for a breach of his covenant.

If the plaintiffs' land was in fact benefited, or was not injured, by having the wall on the eastern tract permanently maintained, they can recover only nominal damages for such incumbrance.

Argued May 6th—decided July 18th, 1902.

ACTION for breach of covenant of warranty, brought to the Court of Common Pleas in Hartford County and tried to the court, *Case, J.;* facts found and judgment rendered for the defendant, and appeal by the plaintiffs for alleged errors in the rulings of the court. *Error and new trial granted.*

The case is sufficiently stated in the opinion.

*John A. Stoughton* and *Albert C. Bill,* for the appellants (plaintiffs).

*Arthur L. Shipman* and *Charles A. Goodwin,* for the appellee (defendant).

HALL, J. This is an action for damages for an alleged breach of the covenant of warranty contained in a deed from the defendant to the plaintiffs.

The complaint states that the defendant has failed to defend to the plaintiffs the stone wall included in the "second piece" described in said deed, and that the plaintiffs have been evicted from a part of the premises by the operation of a judgment permanently enjoining the plaintiffs from removing the stones from said wall.

In the appeal to this court the plaintiffs claim that the trial court erred in holding that the facts found failed to establish a breach of the covenant of warranty.

It appears from the record before us that in 1859, Samuel Colt owned a tract of land, of which that now owned by the plaintiffs was a part, bounded west by the Connecticut River and north by one Dowd. In that year said Colt, with the consent of Dowd, built at his own expense a stone wall, on the boundary line between them, from the river to an ash tree 250 feet east from the river. This wall was a massive structure, about 11 feet thick and more than 12 feet high at the river, and diminishing in size from that point for a distance of 130 feet, and of a general uniform height and thickness of about 3 feet from the latter point to the ash tree. The divisional line of the two properties is the middle of the wall throughout its entire length. While the wall incidentally serves the purpose of a divisional fence, it was chiefly intended as a permanent protection for the land north and south of it against damage from the river in times of flood. It still serves its purpose as a protection to the Dowd land on the north and the land embraced in the Colt tract on the south, but its main value so far as the plaintiffs' land is concerned was impaired when the use of that tract in connection with their ferry was abandoned by the Colts before the plaintiffs took their title.

After the death of Samuel Colt, the defendant, his devisee, on April 27th, 1876, by warranty deed conveyed the eastern part of said Samuel Colt tract to Roger Lang, describing it as " a certain piece of land with the buildings and appurtenances thereon (excepting as to a certain stone wall hereinafter mentioned) . . . : beginning at the angle formed by the north and west lines of land belonging to William Coburn, running thence southerly on line of said Coburn 121 feet, thence westerly on line of land belonging to myself 220 feet, thence northerly on line of my own land 43 feet to the stone wall above-mentioned and at right . . . thereto, thence easterly on line of said wall about 210 feet to the place of beginning. It being understood and agreed that nothing herein contained

shall be construed to convey the right to remove said stone wall or any part thereof, the right to the maintenance thereof being expressly reserved."

On the 2d of December, 1892, the defendant conveyed the rest of said tract lying between the tract conveyed to Lang, as above stated, and the river, to the plaintiffs by warranty deed describing that part of the premises, called in the deed the "second piece," as follows : " a small piece of land at the Ferry landing, bounded north on land of Mrs. Dowd and Roger Lang, east on land of Roger Lang, south on Colt Street, and west on the Connecticut River, including the Ferry landing, wharf, and the stone wall bounding said land on the north, and also including that part of the wall which is north of the land of Roger Lang, and which was reserved to the grantor in a deed from the grantor to said Lang, dated April 27th, 1876."

Thereafter—the plaintiffs having commenced to remove the stones from said wall, claiming that by their said deed from the defendant they became the owners of the entire wall and the land under it—the owners of the Dowd property north of the wall, by an action brought to the Court of Common Pleas of Hartford county, which action the present defendant assisted in defending, obtained a permanent injunction restraining these plaintiffs from breaking up and removing the wall. This judgment of injunction was not appealed from and is still in force.

In considering whether the judgment of the trial court in the present case was erroneous, the first inquiry is what part of, or what interest in, the wall or the land under it does the deed from the defendant purport to convey to the plaintiffs ; and second, if it appears from the language of the deed that it was intended to convey to the plaintiffs some interest in the wall or in the land under it, is the judgment of injunction an eviction which works a breach of the defendant's covenant warranty ?

It will be observed that the description of the interest sought to be conveyed in the easterly portion of the wall namely, that part north of the Lang tract, differs from the

description of the interest conveyed in the remaining or westerly part of the wall north of the Ensign tract. The former is described as " that part of the wall which is north of the land of Roger Lang, and which was reserved to the grantor in a deed from the grantor to the said Lang, dated April 27th, 1876 "; and the latter, as " the stone wall bounding said land on the north."

Looking at the Lang deed referred to, in order to ascertain what part of the wall north of Lang was reserved by the defendant, we find these words : "excepting as to a certain stone wall hereinafter mentioned, . . . it being understood and agreed that nothing herein contained shall be construed to convey the right to remove said stone wall or any part thereof, the right to the maintenance thereof being expressly reserved."

We find here no exception or reservation of the wall itself, nor of a right to remove it. The provision "as to " this stone wall, whether it be an exception or reservation, is that the grantee shall not take the right to remove it, and that the grantor shall have the right to maintain it. The fact that such a provision is made indicates an intention of the defendant to convey to Lang the land owned by her under this part of the wall, and in connection with that provision and the fact that the divisional line between the defendant and the land north of the Lang tract was the center line of the wall, the words in the deed to Lang, " thence northerly to the stone wall," and " thence easterly on the line of said wall," may properly be construed as defining Lang's north boundary as the center line of the wall.

When, therefore, the defendant in 1892 conveyed to the plaintiffs, she was not the owner of any land under that part of the wall north of the Lang tract, nor of any interest in that part of the wall itself, beyond the right to maintain it upon the land owned by Lang and that owned by Dowd north of Lang ; and no greater interest in that part of the wall, or the land under it, than that which she thus owned is described in the deed to the plaintiffs.

As to the other part, or westerly end of the wall, the lan-

guage of the plaintiffs' deed does not import that the entire wall north of their tract and west of Lang's land is conveyed to them. The center line of the wall is the divisional line between the defendant and the Dowd land on the north, and the wall being a part of the realty, the defendant owned only the south half of it, at this place. The deed itself bounds the plaintiffs on the north by land of Mrs. Dowd. The line thus defined is the controlling monument in the description of the northern boundary at this place, of the land intended to be conveyed. *Post Hill Improvement Co.* v. *Brandegee,* 74 Conn. 338.

The words of the deed, "including the wall bounding said land on the north," are to be construed as meaning the wall on the land conveyed. The interest of the plaintiffs, therefore, in this part of the wall, as described in the deed from the defendant, is that which follows from the fact that the south half of this structure, which is a part of the realty, stands upon land conveyed to them. The fact that it is referred to in the deed by words which might indicate that it was a divisional fence or wall standing equally on the land of adjoining proprietors, does not, however, limit the plaintiffs to the use of it for that purpose. By the language of the deed itself, the plaintiffs' right to use this part of the wall is wholly unrestricted. The description of the premises conveyed, and the covenants in the deed, give the plaintiffs the same right of beneficial enjoyment of the south half of this part of the structure in question, and of the land under it, as of any other part of the land conveyed by the deed.

Have the plaintiffs been evicted from any part of the premises conveyed by the judgment of injunction?

The covenant of warranty is an undertaking that the purchaser and his assigns shall enjoy the land free from all incumbrances existing at the time of the grant. Proof of a forcible expulsion of the plaintiffs from some part of the land described in the deed is not required to render the defendant liable under her covenant of warranty. A judgment, the necessary effect of which is to deprive the plaintiffs of the power of beneficial enjoyment of a part of the granted

premises, is a constructive eviction. *King* v. *Kilbride*, 58 Conn. 109, 116 ; *Russ* v. *Steele*, 40 Vt. 310.

The judgment of injunction against the plaintiffs did not deprive them of the right, granted by the deed, to maintain the wall north of the Lang tract, and it was therefore not an eviction of the plaintiffs from that part of the premises conveyed.

As to the remainder, or westerly end of the wall, the plaintiffs by the judgment of injunction have been deprived of the right to use the south half of it for any other purpose than as a stone wall, and the land under it for any other purpose than as a support for such wall.

The record before us shows that the judgment of injunction is based upon facts, not appearing in the plaintiffs' deed, which show that the owners of the property on the north had a legal right to have the south half of this structure stand upon the land conveyed to the plaintiffs ; that it was erected as a protection to the property on the north and south of it, and under the mutual agreement of the adjoining proprietors, that it should remain permanently, and not be subject to removal if at any time it ceased to serve as a benefit to Colt.

Whether, upon the facts, the plaintiffs in the injunction suit were entitled to have the wall remain upon the land of the present plaintiffs, is not a matter to be considered by us. That question was conclusively settled by the judgment in the injunction suit. The inquiry here is whether the right, established by that judgment, in the adjoining proprietors on the north, to have the south half of the wall permanently remain upon land conveyed to the plaintiffs, deprives the latter of the enjoyment of a beneficial right in that land granted to them by their deed from the defendant.

The defendant has covenanted in her deed to the plaintiffs that the premises are free from all incumbrances whatsoever. Unless it can be said that such outstanding right, which has been enforced by a judgment, is not an incumbrance upon the land, within the meaning of the words " all claims and demands whatsoever," against which by the words of her covenant of warranty the defendant has undertaken to defend the plaintiffs, the judgment of injunction was a constructive

eviction of the plaintiffs from this portion of the premises conveyed.

It is argued that, since the rights of the two adjoining proprietors in the wall are mutual, the burden of the easement to which the land of each proprietor is subjected, is balanced by a corresponding benefit, derived from the easement to which it subjects the land of the other proprietor, and that therefore the easement to which the plaintiffs' land is subjected is not such an incumbrance or claim as will render the defendant liable under her covenant of warranty.

The authorities to which we are referred in support of this claim discuss questions arising from the easement which each owner of adjoining house lots has in a party wall, for the support of the buildings on his own land. Jones on Easements, § 632, defines a party wall as a " dividing wall between two houses to be used as an exterior wall for each." In several States the rights of adjoining proprietors in such walls are fixed by statute. The case of *Bertram* v. *Curtis*, 31 Iowa, 46, which holds that a party wall is not an incumbrance, is based upon a statute under which the existence of a party wall would not be an incumbrance, and with reference to the provisions of which it is presumed the covenants of the deed were made. In the case of *Mohr* v. *Parmelee*, 43 N. Y. (Super. Ct.) 320, the question of whether a party wall could stand equally upon the land of adjoining proprietors was not raised. The wall in that case stood wholly upon one of the adjoining lots, and the right of the proprietor of the other to use it as a party wall was held to constitute an incumbrance upon the lot on which the wall stood. To the same effect is *Giles* v. *Dugro*, 1 Duer, 331. The case of *Hendricks* v. *Stark*, 37 N. Y. 106, which seems to support the defendant's contention that a party wall is not an incumbrance, was an action to enforce the specific performance of a contract for the purchase of a hotel in the city of New York, which the defendant refused to complete upon the ground that two of the walls of the hotel were party walls supporting buildings on adjoining lots. The court, in deciding that the plaintiff was entitled to recover, held that " a party wall, creating a community of in-

Ensign et al. *v.* Colt.

terest between adjoining proprietors is in no just sense to be deemed a legal incumbrance upon the property." But the court adds that, even if this were otherwise, the plaintiff was entitled to a decree, since after full opportunity of examination the defendant approved of the form of the proposed conveyance and executed a bond and mortgage for the balance of the purchase price.

The basis of the decision in this and other cases cited, that a party wall is not an incumbrance, seems to be that the lands of the adjoining owners are necessarily equally benefited and equally burdened by such party wall. But even as applied to party walls, the correctness of this rule has been denied in actions at law for a breach of the covenants of a deed. *Mackey* v. *Harmon,* 34 Minn. 168, 172, cited with approval in *Burr* v. *Lamaster,* 30 Neb. 688; *Edmunds' Appeal* (Pa. 1887), 8 Atl. Rep. 31. In 8 Amer. & Eng. Ency. of Law (2d Ed.), pp. 125, 126, where authorities upon this question are collected, it is stated, in the article on *Covenants,* that while it has been said that a party wall standing equally upon the land of adjoining proprietors does not constitute an incumbrance upon the land of either, the law has with reason been declared to be otherwise. In *Mackey* v. *Harmon,* 34 Minn. 168, the court, after defining an incumbrance as a right or interest in a third person in land to the diminution of its value (2d Greenl. on Ev., § 242), says: "The existence of the incumbrance does not depend upon the extent or amount of the diminution in value. If the right or interest of the third person is such that the owner of the servient estate has not so complete and absolute an ownership and property in his land as he would have if the right or interest spoken of did not exist, his land is, in law, diminished in value and incumbered."

In the case before us it appears that Colt in erecting this wall, and the Dowds in permitting it to be erected partly on their land, were "fully awake to the advantages of the structure both as a protection to Colt's slip and as a protection to Dowd's land;" that it was expressly provided in the original agreement that it should permanently remain, even

if it ceased to serve as a benefit to the Colt property; that the main value of the wall, as to the plaintiffs' land, was impaired before the plaintiffs took their title, and that the plaintiffs now claim that the value of their property is diminished by the fact that they are compelled to allow this wall to remain on their land, and are not permitted to use their part of the wall, and the land under it, for other purposes than those to which they were dedicated by said agreement.

Upon the facts before us, the easement of the owners of the land on the north, entitling them to have the wall remain on the plaintiffs' land, is an incumbrance upon the plaintiffs' title to the south half of this part of the wall and the land under such south half, and it is none the less an existing incumbrance because the plaintiffs have an easement upon the land on the north. *Hubbard* v. *Norton,* 10 Conn. 422, 431. This incumbrance is not excepted from the covenant of warranty, and the judgment of injunction, establishing the incumbrance and enforcing its use against the plaintiffs, constitutes an eviction. Since the plaintiffs cannot remove the incumbrance they are entitled to compensation for the depreciation in the value of their land occasioned by it. 3 Sedgwick on Damages (8th Ed.), § 967 ; *Fagan* v. *Cadmus,* 46 N. J. L. 441, 445. If it is a benefit, or is not an injury to the plaintiffs' land, to have the wall permanently remain, as provided by the agreement between Colt and Dowd, and directed by the judgment, they are entitled to only nominal damages. *Hubbard* v. *Norton,* 10 Conn. 422, 435. In determining what damage the plaintiffs have sustained, the entire agreement, including the value of the plaintiffs' easement upon the Dowd land, is to be considered, the question being how much less, if any, is the plaintiffs' land, described as the " second piece, " worth, with the mutual easements and servitudes created by the agreement and judgment, than it would have been without them. *Mackey* v. *Harmon,* 34 Minn. 168, 173.

The trial court erred in holding that the judgment of injunction was not an eviction, and in rendering judgment for the defendant.

There is error and a new trial is granted.

In this opinion TORRANCE, C. J., and BALDWIN, J., concurred; HAMERSLEY and PRENTICE, Js., dissented.

HAMERSLEY, J. (dissenting). The allegation is an eviction from a strip of land along the northern boundary line—six feet wide at one end and two feet wide at the other—being an insignificant portion of the farm conveyed by the deed. The proof is an injunction restraining the plaintiffs from destroying a wall, standing one half on the strip described and the other half on a similar strip belonging to the Dowds, so as to protect the land of the latter as well as of the plaintiffs from the ravages of the annual floods. If such equitable protection of the land of the adjoining proprietor puts the plaintiffs out of possession of the strip of land described, the allegation of eviction is proved; otherwise it is not.

The judgment relied upon as proof of a substantial eviction, in fact recognizes and confirms the plaintiffs' title to the land, and possession thereof. It upholds the plaintiffs' legal title to and possession of the land, and holds that, by reason of that title and possession and the conditions of the adjoining proprietors in their relation to the river that flows by both, each has a beneficial interest in the massive boundary wall which serves the purpose of a natural rock, dividing the properties and protecting both from destruction by the river, and that upon these conditions a duty arises restraining each from destroying this protecting boundary, which equity will recognize and enforce.

Assuming this legal conclusion of the judgment to be law, it seems clear that the enforcement of such a duty by injunction is not substantially, nor in any way, an eviction from the land whose ownership and possession gives rise to the duty enforced.

The possession of land, as of all property, carries with it certain duties, especially the duty of so using one's own property as not to injure others. These duties frequently arise in respect to adjoining lands, sometimes from the natural

conditions of the land itself, sometimes from the conduct or agreements of the adjoining owners, and sometimes from a combination of both causes. However the duty arises, it is in some way a beneficial interest in the land belonging to and in possession ·of another, but perhaps never comes within the definition of an easement, where the duty arises from conditions independent of any actual or presumed agreement.

Treating the judgment as establishing and enforcing an easement, which is the view of the matter most favorable to the plaintiffs, it is clearly an easement consistent with the ownership and possession by the plaintiffs of the land conveyed. It is well settled that the exercise of such an easement is not an eviction, and is not a breach of the covenant of general warranty. The covenant of general warranty is a real covenant, peculiar in its origin and limited in its effect. It is not a covenant against incumbrances, or even of seizin. Its purpose is to secure the grantee against dispossession of land by persons claiming under a paramount title. *Giddings* v. *Canfield*, 4 Conn. 482; *Mitchell* v. *Warner*, 5 Conn. 497. It therefore cannot be broken unless the grantee is in reality dispossessed of the land conveyed. This dispossession may be either a literal or substantial one; but in either case, it must be an actual dispossession. "A turning out by the shoulders," to quote Lord Mansfield, "is not necessary to constitute an ouster." It is sufficient if an act has the same effect and falls within the same reason. *Mitchell* v. *Warner*, 5 Conn. 497, 521. The existence of an incumbrance at the date of the deed is not a breach of this covenant. It is true that there may be an incumbrance of such a nature that it may ripen into a paramount title to the land and involve an actual dispossession of the grantee equivalent to an eviction, and so establish a breach of a covenant of general warranty. Such is the case where a prior mortgage has been foreclosed and judgment obtained whereby the mortgagee takes possession under a paramount title. *King* v. *Kilbride*, 58 Conn. 109, 116. But the exercise of an easement which is consistent with ownership and possession of the land conveyed is not an eviction, either literally or in substance. *Mitchell* v. *War-*

*ner*, 5 Conn. 497, 516; *Alling* v. *Burlock*, 46 id. 504; *King* v. *Kilbride*, 58 id. 109. It is clear that if the full and continuous enjoyment of the rights secured by an easement is not an eviction, a judgment restraining the grantee from so interfering with those rights as to cause irreparable damage to adjoining land cannot be an eviction. In neither case is there an ouster of the grantee under paramount title.

It may be doubtful whether such mutual interest in the continuance of a boundary wall situated equally upon adjoining land and serving as a mutual protection to the land of the adjoining proprietors is in itself an incumbrance within the meaning of the covenant against incumbrances, but it is certain that it never can ripen into a title to land, or be capable of exercise so as to deprive the owner of his possession.

It may also be doubtful what effect should be given, in view of all the facts found, to the language of the deeds from the defendant to the plaintiffs in respect to the boundary wall. It may be claimed that in addition to the conveyance of the land described the deed grants a right to maintain the existing wall on the land of the Dowds. If this be so, it is the grant of an easement to which the covenant of general warranty does not attach, and the plaintiffs have not been evicted from the land conveyed. Or it may be claimed, that in addition to the land conveyed the defendant sold the plaintiffs her interest in the mutual easement pertaining to the wall described. If this be so, the plaintiffs clearly enjoy everything the deed conveyed. Or it may be claimed, that in addition to the land conveyed the defendant sold to the plaintiffs the material of the wall, as if it were a loose pile of stones. If this be so, it is clear that any failure to deliver the property sold has no relation to the general warranty of the land. There is no reasonable view that can be taken of the contracts of the parties in respect to this wall which justifies the claim that the plaintiffs have been evicted from the land conveyed in violation of the covenant of general warranty.

I think there is no error in the judgment of the Court of Common Pleas.

In this opinion PRENTICE, J., concurred.