Virginia Zandri *vs.* Herman Tendler et als.

Maltbie, C. J., Hinman, Banks, Avery and Brown, Js.

Argued May 11th—decided July 1st, 1937.

*Samuel M. Gordon,* for the appellant (plaintiff).

*A. S. Bordon,* for Home Owners' Loan Corporation, and *Nathan A. Resnick,* for the Tendlers, appellees (defendants), with whom, on the brief, were *A. A. Ribicoff* and *F. G. Monahan.*

MALTBIE, C. J. The controversy in this action concerns the right of the plaintiff to foreclose a mortgage upon certain land in New Haven. The mortgage had been originally executed by the defendant Herman Tendler to the plaintiff and another, but the latter subsequently assigned his interest in it to the plaintiff. The mortgage in terms gave, granted, bargained, sold and confirmed to the mortgagees the land, describing it by metes and bounds, and then, before the habendum clause, it recited that the property was subject to the right of an adjoining owner to have the eaves of a garage drip upon it, to certain restrictions of record and to a first mortgage to the Parker-Smith Company, trustee. It contained the usual covenants;

that against incumbrances was limited by the words "except as aforesaid," but that of warranty was unrestricted.

Subsequent to the giving of this mortgage the Second National Bank of New Haven as trustee became the owner of the Parker-Smith mortgage. It brought an action of foreclosure against several parties including the plaintiff and Tendler. A decree of foreclosure was granted, but none of the defendants redeemed. The bank did not pursue a claim for a deficiency judgment. It went into possession and on December 21st, 1931, filed a certificate of foreclosure. Thereafter until May 25th, 1934, it was in possession and control of the property, managing it and collecting the rents without objection from anyone. Tendler with his family occupied an apartment in the building, paying rent to the bank. Some time prior to January 27th, 1934, the bank suggested to him and his wife that they endeavor to secure the aid of the Home Owners' Loan Corporation to recover the property. Tendler did not desire a reconveyance, but his wife, the defendant Celia Tendler, did, and through an attorney she entered into negotiations with the corporation to bring that about. It was a rule of the corporation that it would only aid those who were or had been owners of the property involved and that all mortgages made to it by married persons must be executed by both husband and wife. Tendler, in order to assist his wife, signed an application to the corporation for aid and agreed to execute all necessary documents. It was agreed between the bank, the corporation, Tendler and his wife that the bank would quitclaim the property to Tendler; he and his wife would execute a mortgage to the corporation; it would thereupon pay in cash certain overdue taxes and the expenses of the transaction and would issue bonds which would be accepted by the bank in pay-

ment for the property; and that Tendler would immediately transfer the property to his wife.

On May 25th, 1934, the agreement was consummated, the various steps being taken as nearly simultaneously as might be and the documents were recorded at substantially the same time, the whole constituting one transaction. Subsequently the plaintiff in this action sued Tendler and his wife on the note secured by the mortgage the plaintiff is now seeking to foreclose, claiming that the conveyance to Mrs. Tendler was fraudulent, but the court, while giving judgment against Tendler on the note, held that the conveyance to his wife was not fraudulent and rendered judgment for her. The plaintiff has not been able to satisfy her debt from Tendler and so brought this action to foreclose the mortgage securing it. The question at issue is whether although the plaintiff was foreclosed in the action upon the first mortgage she can now enforce her second mortgage against Tendler, his wife, who is the present owner of the equity, and the Home Owners' Loan Corporation as a subsequent mortgagee, by reason of the fact that the bank after foreclosure reconveyed the property to him.

The question presented has never been determined in this State and varying decisions have been reached in other jurisdictions in more or less similar situations. In most of these decisions the determining consideration has been the effect of the covenant of warranty in the mortgage claimed to have been reinstated by the acquisition of the property by the original mortgagee. The warranty known to the English common law bound the grantor, in case of a breach, to recompense in kind; *Stewart* v. *West,* 2 Harris (14 Pa. St.) 336, 338; Rawle, Covenants (4th Ed.) p. 209; although it has been stated that damages might also be recovered in certain cases. *Paxson* v. *Lefferts,* 3 Rawle (Pa.) 59,

68.  The common-law warranty has been generally replaced in this country by the covenant of warranty. Under this covenant a breach occurs only where the grantee has been actually or constructively evicted; *Perkins* v. *August,* 109 Conn. 452, 458, 146 Atl. 831; but there is an eviction where a prior mortgage has been foreclosed and judgment obtained, under which the mortgagee takes possession.  *King* v. *Kilbride,* 58 Conn. 109, 116, 19 Atl. 519; and see *Ensign* v. *Colt,* 75 Conn. 111, 122, 52 Atl. 829.  Where the conveyance is of an unconditional fee and there is a breach of the covenant, the measure of damages in this jurisdiction is the value of the property.  *Sterling* v. *Peet,* 14 Conn. 245, 254; *Beecher* v. *Baldwin,* 55 Conn. 419, 428, 12 Atl. 401.  Where the covenant is contained in a mortgage deed, obviously the measure of damages would not necessarily be the value of the mortgaged property; "the plaintiff is entitled to indemnity and no more and to compel the defendants to pay the full value of the estate would be unjust if it exceeded the amount of the incumbrance."  *Donahoe* v. *Emery,* 50 Mass. (9 Metc.) 63, 69; *Winslow* v. *McCall,* 32 Barb. (N. Y.) 241, 249.  For our present purposes it is not necessary to consider the particular measure of damages in such a case, but only to point out that, at least where the amount of loss to the mortgagee is less than the value of the property, he could not recover the latter.  Under both the common-law warranty, with its requirement of recompense in kind, and the present covenant of warranty, under which upon a breach damages are limited to the loss actually suffered, the protection afforded reaches no further than the interest conveyed in the deed under which the grantee claims.

Where a grantor without title made a conveyance and subsequently acquired title, that title might under

the common-law warranty become vested in the grantee because, being entitled to recompense in kind for the breach of the warranty, he had an equity to require the transfer of it to him. Sugden, in *Jones* v. *Kearney,* 1 Drury & Warren (Irish Ch.) 159. The same result is accomplished under the covenant of warranty. "The principle deducible from these authorities seems to be, that, whatever may be the form or nature of the conveyance used to pass real property, if the grantor sets forth on the face of the instrument, by way of recital or averment, that he is seized or possessed of a particular estate in the premises, and which estate the deed purports to convey; or, what is the same thing, if the seizin or possession of a particular estate is affirmed in the deed, either in express terms or by necessary implication, the grantor and all persons in privity with him will be estopped from ever afterward denying that he was so seized and possessed at the time he made the conveyance." *Van Rensselaer* v. *Kearney,* 52 U. S. (11 How.) 297, 325; *Comstock* v. *Smith,* 30 Mass. (13 Pick.) 116, 119; Rawle, Covenants (4th Ed.) p. 418; and see *Wheeler* v. *Young,* 76 Conn. 44, 48, 55 Atl. 670. The covenant is intended to give full effect and operation to the very estates and interests conveyed by the deed. *Davis* v. *Tollemache,* 2 Jurist N. S. (Eng.) 1181.

The doctrine is "intended to carry out the real intention of the parties that a certain particular estate was to be conveyed and received, and where that intention appears, the law will not suffer the grantor to defeat it." Rawle, Op. Cit., p. 445. Thus where the terms of the covenant are general but only a limited title is conveyed, the covenant is to be limited to the interest actually conveyed. *Sweet* v. *Brown,* 53 Mass. (12 Metc.) 175, 177; *Harris* v. *Harris,* 102 Mass. 326, 328; *Van Rensselaer* v. *Kearney,* supra, p. 327.

If the title purporting to be conveyed is an equity of redemption, the warranty and estoppel arising out of it will extend no further than to protect the grantee from loss of that title. *Hoxie* v. *Finney*, 82 Mass. (16 Gray) 332; *Bates* v. *Foster*, 59 Me. 157. Where the mortgage describes the land by metes and bounds and then recites that it is subject to a mortgage, the conveyance is of an equity of redemption and the warranty, though in general terms, and the estoppel arising out of it, will go no further than to prevent the mortgagor from retaining any interest derived by a subsequent conveyance adverse to that title. *Brown* v. *South Boston Savings Bank*, 148 Mass. 300, 304, 19 N. E. 382; *Jackson* v. *Hoffman*, 9 Cowen (N. Y.) 271, 273; *Walther* v. *Briggs*, 69 Minn. 98, 71 N. W. 909; *Freeman* v. *Foster*, 55 Me. 508. Of a warranty of "the above described and bargained premises," the Supreme Court of Illinois said: "Premises, in popular phrase, is sometimes used for land, and 'the premises,' in the connection in which it is here used, means that which is conveyed." *Holbrook* v. *Debo*, 99 Ill. 372, 381.

In the mortgage deed here in question, the defendant gave, granted, bargained, sold and confirmed the land to the grantee, describing it by metes and bounds and then, as a part of the descriptive portion of the deed, added that the premises were subject to an easement of eaves drip, certain restrictions contained in another deed, and to the mortgage to the Parker-Smith Company, trustee. There can be no question of the intent of the parties that the deed should convey, not an absolute title to the land described, but an equity of redemption only. Tendler is estopped to deny that he had a title to the land described subject to the Parker-Smith mortgage but that estoppel cannot be extended to prevent him from asserting title derived by reconveyance under the foreclosure of that

mortgage. The title he acquired by the reconveyance to him was not one against which he warranted but one which came to him as the result of the foreclosure of the first mortgage subject to which the plaintiff took her title. The mortgage which the plaintiff is seeking to foreclose did not revive upon the bank reconveying the property to Tendler.

Examination of the numerous cases cited by the plaintiff in support of her contention greatly affects their weight as authority. In some the statements referred to are purely obiter dicta and others do not evidence the careful consideration which would make them persuasive in so controversial a matter. In two jurisdictions there are applicable statutes and it is not possible to determine how far they influenced the decisions. *Merchants National Bank* v. *Miller,* 59 N. D. 273, 229 N. W. 357; *Martin* v. *Raleigh State Bank,* 146 Miss. 1, 111 So. 448. In *Sandwich Mfg. Co.* v. *Zellmer,* 48 Minn. 408, 51 N. W. 379, the mortgage purported to convey the land, not the equity of redemption, and this case is distinguished in *Walther* v. *Briggs,* supra, upon this ground. The record in *Parsons* v. *Little,* 66 N. H. 339, does not disclose whether it was the land or the equity of redemption which the deed purported to convey and it may have been the former, as it apparently was in *Bennett* v. *Keehn,* 67 Wis. 154, 30 N. W. 112. *Ayer* v. *Philadelphia & B. Face Brick Co.,* 157 Mass. 57, 31 N. E. 717, turned upon the particular terms of the covenant, was stated in the opinion to be a close case, and recognized the authority of some of the cases we have cited in support of our conclusion. *Otter* v. *Lord Vaux,* 43 Eng. Reprint, 1381, 6 De Gex, M. & G. 638; *Hilton* v. *Bissell,* 1 Sandf. Ch. (N. Y.) 407, and *Stiger* v. *Mahone,* 24 N. J. Eq. 426, went upon the theory that there was

in fact merely a payment of the first mortgage by the transaction, leaving the second mortgage unaffected.

The foreclosure of the first mortgage, no deficiency judgment being sought, followed by the cutting off of the rights of redemption of the defendants by the expiration of the law days fixed for them without action upon their part, extinguished the mortgage debt. *Brooks* v. *Benham,* 70 Conn. 92, 38 Atl. 908; *City Lumber Co. of Bridgeport, Inc.* v. *Murphy,* 120 Conn. 16, 22, 179 Atl. 339. It is conceivable that despite the foreclosure the parties might have agreed that Tendler could still pay the debt and secure a reconveyance of the property to himself or another and in such a case the bonds given to the bank and the cash paid by the Home Owners' Loan Corporation might perhaps be considered as payment of the debt. But they were, as the trial court has found, the purchase price of the property and to regard them as payment of the debt would be to give to the transaction, not its actual effect, but one at entire variance with its real nature.

It is not necessary to consider the other claims discussed in the brief. It may be pointed out, however, that it has been held that the judgment foreclosing the first mortgage, terminating as it did the right of the second mortgagee to redeem, has been held sufficient to prevent the reinstatement of the latter mortgage; *Plum* v. *Studebaker Brothers Mfg. Co.,* 89 Mo. 162, 165, 1 S. W. 217; *Murray* v. *Newsom,* 111 Fla. 193, 149 So. 387; that where in such a case as this there has been a fraudulent scheme by the mortgagor and the first mortgagee to free the land from the burden of the second mortgage, equity might give relief; *Elkind* v. *Pinkerton* (Massachusetts) 2 N. E. (2d) 456; *Shinn* v. *Shinn,* 15 Bradw. (Ill.) 141, 147; note, 51 A. L. R. 447; and that in any event the mortgage to

the Home Owners' Loan Corporation, being a purchase price mortgage, would have precedence over that of the plaintiff. *Joseph* v. *Donovan,* 116 Conn. 160, 164, 164 Atl. 498; *Duer* v. *Jaeger,* 186 N. Y. Sup. 584.

There is another aspect of the question which so far as we have observed has not been pointed out. It may often happen, as apparently was the situation in this case, that the most beneficial opportunity a foreclosing mortgagee has to realize upon the property is by a resale to the mortgagor. But the latter would be less apt to buy the property if the effect would be to reinstate incumbrances subsequent to the mortgage foreclosed. The application of the doctrine for which the plaintiff contends might thus adversely affect the foreclosing mortgagee. The judgment of foreclosure in favor of the bank vested in it the title to the property as against the plaintiff, a party to the action. If the question were presented in this case, we would have to consider whether the interference with the first mortgagee's full jus disponendi which would result from the application of the doctrine would not run counter to the proper effect to be given to judgment of foreclosure obtained by it.

There is no error.

In this opinion the other judges concurred.