## GINN & al. versus HANCOCK.

The covenant of seizin, in a deed of conveyance, is not broken, if the gran-tor's lessee has had exclusive occupation of the land for the next preceding thirty-one years.

Where the charter of an incorporated company gave them authority to erect dams, sluices and locks at different places on a stream, and made provision for compensating the owners of land taken therefor; which dams, sluices and locks they proceeded to erect, and for the location of one of the dams, with its sluice and lock, they took a lease of the land and occupied under it for thirty-one years; (no compensation therefor, *under the provisions of the charter*, having been claimed or made,) it is to be considered, that the works upon the land leased, were erected in virtue of the right given by the charter, and not under the authority of the lease; and that, therefore, at the end of the leasehold, they belong, not to the lessor, but to the com-pany, with a right to be parmanently maintained by them.

Such a right, in the company, is an incumbrance upon the land of the les-sor, within the import of a warranty against incumbrances, in his deed of conveyance to a third person.

The right, so acquired by the company, extends no further than to maintain their works, and give them the exclusive right of so much of the water as is necessary for the sluice way. The residue of the water, belongs in equal parts, to the riparian proprietor on each side of the stream.

COVENANT BROKEN.

The Eastern River Lock and Sluice Company was incor-porated in 1816, with power to erect dams, locks and sluice ways for the passage of rafts and boats, at a stipulated rate of tolls, with all the powers usual and incident to such corpora-tions, and with a provision for the recovery, by land owners, of such damages as they should sustain by the taking of their lands.

They erected two dams, with sluices, upon the stream near

the outlet of the pond above.   They wished to build another dam and sluice two miles lower down, at a place where they themselves owned the land on the west side of the stream, and the defendant claimed to own it on the east side.   They therefore took a lease from the defendant for twenty-five years of a strip of land, twelve rods in width up and down the stream, and extending from the middle of the channel eastwardly to a line several rods above and beyond the shore.

They there erected a dam across the stream, the western portion of it being on their own land, and the eastern portion on the land thus leased from the defendant.   At the centre of the channel of the stream and a little on each side of the centre, they inserted in the dam a sluice way and lock.

The sluice way extended down the stream to a point a little below the lower line of the leased land.

Adjoining to and west of the sluice way, the company erected on their own land and have ever since maintained there, a double saw-mill, a grist-mill and some other machinery.

No damage, by means of such erections, was ever claimed by the defendant or assessed for him under the provisions, made for such cases, in the charter.

It is agreed that "the company entered and occupied the premises under that lease during the term," and continued to occupy it, paying rent therefor to the defendant, until February, 1848.   The defendant then conveyed to the plaintiffs the land to the middle of the bed of the stream, with the water privileges thereof, by deed with all the usual covenants of warranty.

It is for the breach of the covenant of seizin and of freedom from incumbrance, in that deed, that this suit is brought. The works, erected by the company, have none of them been removed, but they all continue as before the expiration of the lease.

The company claim the right to use all the water of the stream for their said sluice, mills and machinery, and it is agreed, for the purposes of this trial, that they have prevented

and kept out the plaintiffs from all beneficial use of the dam and of the water.

The case was submitted by the parties for a decision of their legal rights, with a stipulation, however, that if the company have an exclusive and prior right to use said water only for the necessary purposes of said lock and sluice, and if the plaintiffs have an equal right with said company in the remaining water and to the use thereof, the plaintiffs are to be nonsuit.

The parties also submitted to the court the question of the right of said company, since the termination of said lease, to maintain their said dam even for the purposes of the lock and sluice, and all the rights of the parties growing out of the case stated; and also, if said company may legally maintain said dam, what are the rights and the mode of obtaining and enjoying them, of the plaintiffs to their share of the remaining water after the lock and sluice are supplied.

*Woodman*, for plaintiffs, submitted the case without argument.

*Cutting*, for defendant, after examining and vindicating the defendant's title to the centre of the stream, in virtue of several ancient conveyances, contended also that, if that title should be held insufficient, yet the long occupation by the company, as lessees and tenants *under him*, gave a title not to be controverted.

The counsel then urged the following positions : —

The plaintiffs contend that the covenants in their deed from defendant have been broken, because the company have interfered with, and now claim to maintain and hold exclusively, that part of their dam, which is situated between the middle of the bed of the stream and the eastern shore, all of which is embraced in plaintiff's deed from defendant.

A question then arises as to what rights the corporation acquired by force of their charter, and their proceedings under it.

The company had authority to erect, and did erect their dam, a portion on the conveyed premises; to wit, on the east-

ern side of the river. If the defendant at that time "suffered any damage" and the parties could not agree, the act pointed out the mode of obtaining it. But the parties did agree on the amount of damages "for and during the period of *twenty-five years*" from February 28, 1817.

Ordinarily, permanent fixtures revert with the land.

The company did not take the defendant's land by virtue of their charter, but by force of the lease, and they are estopped from setting up any other relation, than that of tenant. Thus it follows that, at the termination of the lease, the land and dam reverted to the defendant. R. S. chap. 126, § 3.

But assuming that the rights of the parties were only suspended during the lease ; then the plaintiffs, the grantees of the defendant, have the defendant's right to petition, and may recover for their damages under the act.

The company has not "the right to the use of all the water." They can claim only by force of their charter, since the expiration of their lease. Such claim only extends to the use of water sufficient for "*a sluice and lock or locks.*" Any other use beyond that, is a trespass on the proprietors of the eastern shore. No provision is inserted in the charter for recovery of damages, other than for such use. That use would not interfere with proprietor's right, on the eastern side, to occupy their mill privilege. They have as legal a right to erect mills on the eastern shore as the company had on the western, and as equal a right to the water, except for the purpose of supplying the sluice and lock. *Bliss* v. *Rice*, 17 Pick. 23, and the authorities there cited.

The riparian proprietors on the eastern shore would have the right to draw water from that part of the dam, and share the *surplus water* with the owners of the mills on the western shore. Besides, for any detriment to the *original* privilege by the company after the termination of the lease, they might petition for damages under the act ; *provided,* the dam does not revert as I first contended.

Supposing mills to be erected on the eastern shore, equiva-

lent to those on the western shore, by whom and how should the dam be kept in repair ?

This I suppose, would be regulated by R. S. chap. 86, since the dam would be used by the owners of mills on each side, embracing also the right of the corporation, under the charter, which, so far as it extends, would have priority to both, since the former only would be entitled to the surplus water.

The parties respectfully request the court, to settle this question, as it may save the necessity of further litigation.

SHEPLEY, C. J. — The action is covenant broken, founded upon the covenants contained in a deed, executed by the defendant on December 6, 1847, by which he conveyed to the plaintiffs a tract of land situated on the easterly side of Eastern river, bounded twelve rods by the river and extending easterly from it, four rods, and westerly to the middle of the bed of the river.

The first inquiry is, whether the defendant at the time of the conveyance was the owner in fee of the land conveyed. He executed a lease of the premises, extending to the middle of the channel of the river, to the Eastern River Lock and Sluice Company, on February 28, 1817, to hold for the term of twenty-five years. It is agreed, that the company entered and occupied the premises under that lease during the term, and continued to occupy after its termination, paying rent therefor to the defendant, until February 28, 1848. This is satisfactory proof of an exclusive occupation of the defendant, by his tenant, under claim of title, for thirty-one years. He appears, therefore, to have been the owner of land in fee, at the time of the conveyance. The fact, that another person may have been entitled to an easement upon some portion of the premises, would not disable him to convey the fee. The covenant of seizin, does not appear to have been broken.

The next inquiry is, whether his title at the time of the conveyance, was free from incumbrance. It appears, that the company by its act of incorporation, approved on December 13, 1816, was authorized " to make a sluice and lock or locks

from the outlet of Eastern River Great Pond, so called, to the water below the falls, at the head of the tide, in the town of Orland, in the most suitable place for making the same, and to erect such dam or dams as may be necessary for the safety and convenience thereof." Provision was made for compensation to persons, who might thereby suffer damage. The company, while it occupied the premises, under lease from the defendant, built a sluice and locks in "about the centre of the stream, and partly on each side of the centre," and erected a "dam across the stream, which runs on the premises in question from the centre of the stream to, and on to, the eastern bank." The dam appears to have been built across the river, extending from land owned by the company on the west side, to the land occupied by it, under the lease on the east side. The company has since erected on its own land, on the west side of the river and near to the dam, "a double saw-mill, a grist-mill, and a lath machine, and has used the water of the stream for the same, at all times, and claims the right to use all the water of said stream."

The counsel for the defendant contends, that his land was not taken by the company for the erection of the dam and sluice, by virtue of the act of the Legislature, but under and by virtue of the lease, and that being permanent fixtures, so much of them as were on the defendant's land, were, at the termination of the lease, part of his estate. There were other dams erected in other places, and the sluice was extended over lands, which do not appear to have been owned or occupied by the company. The former flow of the waters of the river was obstructed and its mode of navigation was varied by the authorized improvements. The acts performed would have been unlawful, if they had not been done by virtue of the act. The presumption is, that they acted lawfully. The company must be considered as acting by virtue of the same authority, in all parts of the river, while constructing connected works of improvement; and not as erecting one portion of such works, by virtue of the act, and another portion by a different right or authority, merely because it was

erected on land owned or occupied by it. The works must therefore be considered as erected and maintained by the company, by virtue of the act, and as rightfully existing there as its property, at the time of the conveyance. It is agreed, that "no damages for the premises in question were ever claimed or assessed under the act, and as there provided." This fact does not deprive the company of the right to maintain those works. The defendant might have applied and have had any damages occasioned thereby, to his reversionary interest assessed according to the provisions of the act. His neglect to do so, cannot diminish the rights of the company. The land must therefore be considered as subjected to that servitude and as thereby incumbered at the time of the conveyance.

The inquiry then arises, respecting the extent of that incumbrance. Whether it embraced the whole water power, and appropriated it to the use of the company, or only such an appropriation and use of the water, as might be necessary for the full and convenient operation of the works. The rights of the company are derived from and limited by its charter. That only can be considered as granted, which is necessary for such use, and operation. If there remained a surplus of water in the river, which might be useful for other purposes, that would not be granted, nor could it be appropriated by virtue of the act. No riparian proprietor could have damages assessed for an injury not occasioned by an erection of the dams, sluice and locks, and by the appropriation of so much water as would be necessary for the full and convenient operation of the works. In all other respects, the rights of the riparian proprietors would remain unaffected. Every such proprietor has an equal right with the owner of the opposite shore to the flow and use of the water, while it flows upon his land, so far as he has not been deprived of it, by grant, license, prescription or by the exercise of the right of eminent domain. The fact, that the company is the owner of the whole of the dam, will not deprive the owner of the eastern shore of the right to use the surplus water. To hold, that it would do so, would be to appropriate the whole water power

to the use of the company. If it be found to be necessary to the use of the surplus water, that it should be drawn through the easterly end of the dam, and that can be done without injuring it, for the accomplishment of all the purposes of the works authorized to be erected, the owner will be entitled to use it in that manner. The right of private property in works erected for public improvements by the exercise of the right of eminent domain, is not such as to exclude all others from a use of it necessary to the enjoyment of their own property, and not inconsistent with the full and convenient use of it for the purposes of the improvement, and not injurious to the works erected.

The company cannot establish any claim to the use of the whole of the surplus water by an adverse use of it, for although it may have had the use of it for more than twenty years, yet it has enjoyed such use by virtue of a lease of the land on the eastern side of the river, extending to the middle of the channel, which precludes the assertion of an adverse enjoyment.

The parties have agreed, " if the court should be of opinion, that said company has an exclusive and prior right to use said water only for the necessary purposes of said lock and sluice, and that the plaintiffs have an equal right with said company in the remaining water and to the use thereof, then the plaintiffs to be nonsuit."

Although the premises at the time of the conveyance were subject to an easement and incumbrance, yet, according to the agreement of the parties, a nonsuit must be entered.

NOTE. — HOWARD, J. took no part in this decision.