72　738
88　152
72　738
93　388
72　738
95　296
72　738
122　478

## FLYNN v. THE WHITE BREAST COAL & MINING CO.

1. **Lease:** WITH OPTION TO PURCHASE: RENT AFTER EXERCISE OF OPTION AND BEFORE CONSUMMATION OF PURCHASE. Plaintiff leased coal land to defendant for mining purposes, with the option to purchase it at any time during the term of the lease at a named price. After the lease had run for some time, defendant elected to purchase the land, and so notified plaintiff, whereupon plaintiff prepared and tendered a deed to be delivered upon the payment of the purchase-money. Plaintiff's title was good, but exception was taken to the form of the deed, and the purchase-money was not tendered, and no conveyance was consummated until some months later. *Held* that defendants were bound to pay the stipulated rent until such time as the conveyance was consummated.

2. ———: COAL LAND: CONSTRUCTION: ROYALTY. A lease of coal land provided that the lessee should pay a certain royalty on coal taken out, but it also provided, and made it of the essence of the contract, that a certain amount of coal should be taken out. *Held* that the lessee was bound to pay royalty on the amount agreed to be taken out, whether actually taken out or not, and that, too, although a portion of the term was necessarily occupied in making the necessary preparations to begin the actual mining of coal. (See opinion for terms of lease more fully stated.)

3. **Deed:** WARRANTY: BREACH: RIGHT OF WAY FOR RAILROAD: NOTICE: DAMAGES. The existence of a right of way for a railroad over land conveyed by warranty deed is a breach of the covenant of warranty for which the grantee may recover, even though he knew of it at the time he purchased; (see cases cited in opinion;) and the grantor cannot complain at having the damages assessed at the purchase-price per acre of the land so occupied, with interest.

### *Appeal from Lucas District Court.*

#### THURSDAY, MARCH 17, 1887.

PLAINTIFF leased to the defendant certain real estate for the purpose of mining and removing coal therefrom. For the coal so mined the defendant agreed to pay one-fourth of one cent per bushel, or six and one-fourth cents per ton, during the existence of the lease, which was for the period of ten years. The defendant had the option during said period to purchase the land at a named price. This action was brought to recover compensation for coal mined, and

agreed to be mined, between the time defendant offered to purchase the land and the delivery of the deed. There was a trial to the court, judgment for the plaintiff, and both parties appeal.

*McNett & Tisdale*, for plaintiff.

*T. M. Stewart*, for defendant.

SEEVERS, J.—I. It is stipulated in the lease that the defendant "is hereby invested with the right and option of

*. LEASE: with option to purchase: rent after exercise of option and before consummation of purchase.* purchasing the [leased land] at any time within the period of ten years from March 1, A. D. 1881, at the agreed price of $10,000, said right to be exercised by giving [to the defendant] a written notice of its election to purchase said land;   *   *   *   and, upon making said election, it shall be, and is hereby made, the duty of [the plaintiff] to make, execute and deliver without delay to [the defendant] a good and sufficient warranty deed,   *   *   *   conveying said real estate to [the defendant]   *   *   *   in fee-simple, upon receipt of the purchase-money; but the exercise of this election shall not relieve [the defendant] from the payment of any royalty in arrears."

In November, 1882, the defendant concluded to avail itself of the option to purchase, and a notice in writing to that effect was served on the plaintiff on December 21, 1882, and on the succeeding day he caused to be prepared a deed conveying the premises to the defendant, which was tendered to it within a day or two thereafter, the same to be delivered upon the payment of the purchase-money. For several reasons, which will be sufficiently referred to hereafter, the purchase was not finally consummated by the delivery of a deed and payment of the purchase-money, until in March, 1883. During such period the defendant mined a large amount of coal, for which the plaintiff claims compensation at the price named in the lease. This claim is resisted by the defendant,

on the ground that, when the option to purchase was exercised, there was a completed contract, and the defendant became the equitable owner of the land and coal, and that the plaintiff was not entitled to compensation for the latter, for the reason that it passed, by the contract of purchase, with the land, to the defendant. The court thought this position not well taken, and found for the plaintiff, upon the theory, we may suppose, that there was no completed contract of purchase; and whether there was or not is the question to be determined on this branch of the case.

The defendant contends that the offer to sell upon the terms stated in the lease was a continuing offer, and that upon its acceptance it became a contract, which could be enforced by an action for specific performance; and we understand the defendant further contends that it is immaterial whether such an action could have been successfully maintained or not, because the land has in fact been conveyed, and the purchase-money paid, and that, when this action was commenced, the contract had been fully executed. As we understand, this proposition is conceded by the plaintiff, with a qualification, and that is that defendant must have done all it was required to do. In other words, that it must have fully complied with the terms and conditions of the option or continuous offer made by the plaintiff, and, as the defendant failed to tender or offer to pay the purchase-money until March, 1883, that the purchase was not consummated until that time.

Counsel for the defendant have cited many authorities in support of their position, all of which have been examined, but we think they are clearly distinguishable from this case. They are mostly actions brought for specific performance, when the purchase-money had been paid or tendered, and the party was entitled to a specific performance, and the questions determined related to the terms and conditions upon which it should be granted. We do not deem it necessary to cite all of these cases, and distinguish them. One citation

will be sufficient. *Willard v. Tayloe*, 8 Wall., 557, is greatly relied on, and in some particulars it is precisely like the case at bar. In that case, as in this, there was a lease of the premises, with an option to the lessee to purchase at a named price within a specified time. The option was exercised, and the similarity between the cases ends, for the reason that, when the option in the cited case was exercised, a tender of the purchase-money was made, and, upon the failure of the lessor to accept it and make a convey-ance, as he had bound himself to do, an action was brought for specific performance. Now, whatever is said by the court has reference to the facts of the case; the material thing being that the lessee had fully complied with the offer to sell. He had done all he could, and all he was required to do. In this case we understand that the plaintiff offered to sell for the stipulated price, and to execute a conveyance upon the payment of the purchase-money, and the defendant agreed to make such payment. The conveyance and pay-ment were concurrent in point of time. The plaintiff made the offer, and he could do nothing more until it had been accepted, and the defendant was ready to perform on its part. The mere acceptance in writing, as we construe the offer, was not sufficient. The defendant should also, at least, have made an offer, or expressed a readiness, to pay the purchase-money upon the execution and tender of the deed. Certainly the defendant would not have been entitled to a conveyance until it made such a tender. Until it did this, an action for a specific performance could not have been maintained. It fol-lows, therefore, we think, that there was not in fact a completed contract. The defendant had not done all it was required to do. Until such a tender was made, the plaintiff was not required to deliver the deed. Suppose, upon receiving the written notice, the plaintiff had said, "I am willing to perform on my part," and nothing more was done by the defendant, could it be regarded as a purchaser? We think not, for the deed was to be made and delivered upon payment of the

purchase-money. The defendant could not have compelled the plaintiff to take the money, but it could have made the tender, and this, we think, it was bound to do. It, therefore, is immaterial whether the deed executed by the plaintiff on the 22d day of December, 1882, was sufficient or not, and it will be conceded that the objections made to the form of the deed were well taken. The plaintiff's title was good, and such a title as he could convey was afterwards accepted by the defendant. Under the lease, the defendant was authorized to mine coal, and was bound to pay therefor. As the defendant did not become a purchaser before March, 1883, it follows that the lease remained in force until that time, and the defendant must pay for all coal mined during that period. Upon this branch of the case the judgment of the district court is correct.

The defendant contends that if it failed to comply with the option or contract of purchase, interest on the purchase-money is all the plaintiff would be entitled to recover. In this we do not concur, for the reason that we think the lease remained in full force and effect until there was a conveyance, or until the plaintiff failed unreasonably to make the conveyance.

II. The lease was executed in February, 1881, and the term was to commence on the 3d day of March, in that year. The lessee was not required to sink any shafts, and the lease provides as follows: " It is further agreed, and this lease is upon this inducement and of its essence, that the said party of the second part will, during the entire term of this lease, vigorously, diligently, and in good faith, without evasion, prosecute its mining and coal business in Lucas county, so as to increase and promote that business as far as practicable; that it will take and mine from said land an amount in bushels and weight equal to one-fourth of the quantity it is required to mine by the contract executed between it and Byron O. Carr, of date February 17, 1880, and of record in said Lucas

2. ——: coal land; construction: royalty.

county, in each and every year; provided that, when the quantity so taken from the land above described shall aggregate fifty thousand tons per annum, then, and so long as such quantity of fifty thousand tons shall be mined from said lands annually, the right of said party of the second part to mine from the other lands shall be unlimited. Nothing in this clause shall prevent or deprive the party of the second part from supplying their contracts and the market with coal from other lands during such time as the coal in the mines of the land herein described shall be unavailable, in consequence of any unforeseen and unavoidable accident. But such right shall only continue for a reasonable length of time, and until, with the exercise of proper diligence and care, such obstructions can be removed; but these provisions shall not in any degree relieve the company from the above provision in regard to diligence, but shall not be held to require of said second party that it shall take or mine any given quantity of coal from said land."

The lease also provides that quarterly settlements shall be made at the close of the months of March, June, September and December of each year, and the payment of the royalty shall be made on or before the 15th of the month following each quarterly settlement. For the coal actually mined the royalty was paid; but it is conceded that the defendant did not commence mining until August, although the term commenced in March. The defendant contends that the mining year did not commence until August, for the reason that it could not with due diligence have its works, entries, etc., completed, so that it could mine coal on the plaintiff's lands, and that, under the lease, it was not bound to pay for coal not mined. The court found that the mining year commenced at the close of the month of March, and ended at the corresponding time in the second year; that during that time the defendant should, under the lease, have mined more coal than it did; and that the plaintiff was entitled to royalty, for such additional quantity, in the sum of $693.16.

The defendant concedes that, if the court was right in its construction of the lease, such amount is $684.06, and we think this amount is correct on the theory adopted by the court.

It will be observed that the defendant agreed to take out during the entire term of the lease, a certain quantity of coal which was to be determined by the Carr lease. It was declared to be of the essence of the contract that such quantity should be mined and taken out in each and every year, and the royalty was to be paid in quarterly payments. On what? The coal actually mined, is the defendant's theory; but the lease does not so stipulate. On the contrary, the defendant agreed to mine, it must be conceded, a certain quantity of coal, and pay a royalty of one-fourth of one cent per bushel. On what did the parties understand such amount was to be paid? Clearly, we think, on the coal agreed to be mined in each and every year. It seems to us the lease is not susceptible reasonably of any other construction.

The controlling provision of the contract in *Reed v. Beck*, 66 Iowa, 21, was, as the court thought, that payments were to be made on the first of each month " after the shaft is opened and mining commenced." In this case the defendant agreed to mine a certain quantity of coal, and pay the royalty, without reference to the question when it commenced mining. If it never did so, as we understand the lease, the royalty on the agreed quantity was to be paid.

The defendant contends that, as it had the right to sink shafts, but was not compelled to do so, the lease should be so construed as to apply to the future, and that the mining year actually commenced when it commenced mining; but we cannot concur in this construction. It seems to us that the lease took effect at once, and its provisions show that it was so intended. The term certainly did not extend beyond the period of ten years. It therefore would have expired on the last day of February, 1891. But the royalty was to be paid

quarterly, and the time each quarter was to close was definitely fixed. For the first year the lease had been in existence but one month at the close of March, 1881. The defendant was not bound to pay any royalty then, because it was only bound to make quarterly payments. The close of the month of June, therefore, was the end of the first quarter, and the mining year closed on the 31st day of March, 1882, and during that year the defendant was bound to pay on all the coal it agreed to mine. It is true that the lease provides, as the defendant contends, that the royalty is to be paid on all coal " taken out." While this is true, the lease provides that a certain quantity shall be taken out, and this is made the essence of the contract, and, fairly construed, the royalty should be paid on such amount. When all the provisions of the lease are considered, this, we think, is what it means, and the parties undoubtedly intended. We may not have referred to all the reasons urged by counsel for the defendant in argument, but we think we have to those upon which most reliance is placed, and that the foregoing sufficiently presents our views of the points mainly relied on.

III. The conveyance executed by the plaintiff was a warranty deed, without any reservations or exceptions. The defendant pleaded, as a counter-claim, that the plaintiff had, prior thereto, conveyed to the Burlington & Missouri Railroad Company, the right of way across said premises, and that such road had been constructed, and was being operated. As this was not denied, the facts pleaded must be deemed true. The court found and determined that there was a breach of the warranty, and that the defendant was entitled to recover the damages sustained. We think this is correct. *Van Wagner v. Van Nostrand*, 19 Iowa, 422; *Barlow v. McKinley*, 24 Id., 69; *McGowen v. Myers*, 60 Id., 256. Under these authorities, the fact that the defendant had knowledge of the right of way or incumbrance is immaterial.

The plaintiff contends that the court allowed the defend-

3. DEED: warranty: breach: right of way for railroad: notice: damages.

ant more than it should have done, but, as we understand, the amount allowed was the purchase-price per acre, with six per cent interest. There is no controversy as to the quantity of land so taken and occupied. We think the finding of the court is correct.

The judgment, therefore, on both appeals, is affirmed, except that there should be $9.10 deducted from the judgment in favor of the plaintiff, as above stated. Under the circumstances, we think each party should pay one-half of the costs in this court.

MODIFIED AND AFFIRMED.