J. H. C. STUHR v. C. D. BUTTERFIELD, Appellant.

**Conveyances:** BREACH OF COVENANT AGAINST INCUMBRANCES. The fact that the board of supervisors had ordered the construction of a drainage ditch is held not to constitute the breach of a covenant against incumbrances in a deed to the land thereafter given.
Sherwin, C. J., and Deemer, J., dissenting.

*Appeal from Fremont District Court.*—HON. C. D. WHEELER, Judge.

TUESDAY, APRIL 11, 1911.

ACTION on breach of warranty resulted in judgment against defendant, from which he appeals.—*Reversed.*

*T. S. Stevens,* for appellant.

*C. W. Kellogg* and *Reed & Robertson,* for appellee.

LADD, J.—The defendant conveyed to plaintiff the S. ½, section 21; the N. E. ¼ and the W. ½ of the N. E. ¼, section 28, all in township 78 W., range 14, Harrison County, covenanting in the deed that the premises were "free of liens and incumbrances except a certain mort-

gage." This was on August 22, 1905. In June prior thereto the board of supervisors of Harrison and Potta- wattamie Counties, acting jointly as provided by chapter 68 of the Acts of the Thirtieth General Assembly, had es- tablished a drainage district and had ordered the excava- tion of a drainage ditch through it thereby appropriating a right of way, one part seventy-five feet and another one hundred and fifty feet wide, through the farm amounting to about fourteen acres. No claim for damages has been filed as authorized by section 1989-a4, Code Supplement. The ditch has been constructed since. The order of the board of supervisors directing the construction of the drain- age ditch followed by its excavation is said to constitute a breach of the covenant against incumbrances, and this is the only question in the case.

Appellant suggests that, inasmuch as the improvement had not been begun at the time of the conveyance, the al- leged incumbrance had not fastened to the land; but the contention is without merit. All the proceedings are con- ceded to have been regular, the right to the way in which to excavate the drainage ditch had been fully established, and, if an incumbrance, it attached to the land prior to the execution of the deed. Nothing the vendee might have done would have relieved the premises of the burden there- by imposed. As to him the appropriation of the right of way was as complete, save the actual excavation of the ditch, as though this had been done, and for this reason the incumbrance, if such it was, had attached prior to the execution of the deed. Such an improvement is author- ized only when of public utility or conducive to the public health, convenience or welfare. Section 1989-a1, Code Supp. This result is accomplished by the drainage of large areas of land either directly or by furnishing an out- let for lateral ditches or tiles. Necessarily benefits accrue therefrom to the land so drained, and this bears the bur- den of expense according to the benefits conferred. Pre-

sumptively some injury results to the land from the taking of the right of way along which the ditch is excavated, and for this reason compensation for damages flowing from such appropriation is exacted as in the taking of the right of way for a railroad or in laying out a highway. See section 1989-a4 et seq. Section 18, article 1, Constitution of Iowa. But the object of such an improvement, among other things, is the benefit of the particular land through which it extends, as well as the surrounding area which drains into it. Ordinarily the drainage ditch follows the lowest portion of the watershed, and merely affords a channel through which the water may flow which otherwise would pass onto or over the land in some other manner so that it can not be regarded as the opening up of an entirely new waterway. The lands through which it extends are mutually interdependent as they were prior to its completion inasmuch as the ditch through the land of one owner is quite as essential to carry the water away as the portions through lands above or below. The drainage ditch as a whole is designed to benefit each parcel of land through which it extends. The nature and object of the easement the public thereby appropriates is much as others within the district like that of a highway. The taking of the right of way for a railroad is of no advantage to the land on which the burden is imposed. It is not intended to improve such land or that surrounding it. The only justification for the appropriation is the demand of the public for a highway of travel and commerce. The thought of any actual advantage to the land in the way of cultivation or productiveness is not involved in the condemnation of a railroad right of way to the public use. The benefits flowing from the construction and operation of a railway are shared by the community generally. But highways are established because essential to the enjoyment of the land on which they constitute an easement. The advantage of a particular road to the owner of the land may

be doubtful in some instances, but it is established as a part of a system designed to be of use and value to the owner as well as all others out of whose lands the highways are carved.

In *Harrison v. Railway,* 91 Iowa, 114, in holding that the existence of a highway on the land conveyed did not constitute a breach of warranty against incumbrances, the court, after quoting definitions of "incumbrance," and observing that "no easement should be regarded as an incumbrance to an estate which is essential to its enjoyment, and by which its value is presumably enhanced," said, speaking through Granger, J.: "By this system of highways the landed estates become mutually servient, and in such a way that the easements are mutually advantageous, and the respective land values enhanced thereby. Such an easement is not an incumbrance. If the rule of appellant's contention were to be announced of the multitude that would seek a recovery because of conditions broken in their deed of conveyance, probably not a score, if, indeed, one, could be found who would have made the purchase without the easement of which he would complain, or the assurance that one could be established. It seems demonstrable that the mere existence of a public highway is not an incumbrance to land. It is probably true that such highways might be made an incumbrance; but that is not the question with which we are to deal. To our minds the known conditions, of which judicial notice is taken, lead to the conclusion that public highways are so far essential to the usual and ordinary use and occupancy of land, and so far constitute an inducement to the purchase of the same, as that they are not incumbrances, so as to constitute a breach of the usual covenants of warranty." After referring to several decisions, it was said in conclusion that: "We make the distinction on the line of what the law will presume to be an incumbrance in the sense that it is a damage to the estate. Other easements to

which our attention has been called, or which we may have been able to consider, are not such that the law will presume them as attaching to the estate at the instance of the owner or for its advantage." The distinction between a railroad right of way easement and that of a highway, and also that of a drainage ditch, is clearly pointed out in the last sentence. The landowner is accorded no hearing as to whether a right of way shall be condemned for the use of a railroad, nor is such a taking of any advantage to the estate from which taken while a highway or drainage ditch may be ordered at his instance, and he is accorded a hearing as to the propriety of the establishment of a highway or a drainage district, and both are presumably of advantage to his land. It must be conceded that there is a conflict in the authorities as to whether a highway is an incumbrance constituting the breach of a covenant against incumbrances, and that the decisions followed by the *Harrison* case are put on the ground that such a covenant does not cover physical easements which are apparent to observation. The reasons for this conclusion were well stated by Paxson, J., in *Memmert v. McKeen,* 112 Pa. 315 (4 Atl. 542): "Incumbrances are of two kinds, viz., (1) such as affect the title; and (2) those which affect only the physical condition of the property. A mortgage or other lien is a fair illustration of the former; a public road, or a right of way, of the latter. Where incumbrances of the former class exist, the covenant referred to under all the authorities is broken the instant it is made, and it is of no importance that the grantee had notice of them when he took the title. *Cathcart v. Bowman,* 5 Pa. 317, *supra; Funk v. Voneida,* 11 Serg. & R. (Pa.) 109 (14 Am. Dec. 617). Such incumbrances are usually of a temporary character, and capable of removal. The very object of the covenant is to protect the vendee against them. Hence knowledge, actual or constructive, of their existence, is no answer to an action for a breach of such covenant. Where,

however, there is a servitude imposed upon the land which is visible to the eye, and which affects, not the title, but the physical condition of the property, a different rule prevails. Thus it was held in *Patterson v. Arthurs,* 9 Watts (Pa.) 152, that, where the owner had covenanted to convey certain lots free from all incumbrances, a public road, which occupied a portion of said lots, was not an incumbrance within the meaning of the covenant. This is not because of any rights acquired by the public, but by reason of the fact that the road, although admittedly an incumbrance, and possibly an injury to the property, was there when the purchaser bought, and he is presumed to have had knowledge of it. In such and similar cases there is the further presumption that, if the incumbrance is really an injury, such injury was in the contemplation of the parties, and that the price was regulated accordingly." See *Des Verges v. Willis,* 56 Ga. 515 (21 Am. Rep. 289); *Whitbeck v. Cook,* 15 Johns. (N. Y.) 483 (8 Am. Dec. 272).

On the other hand, courts adhering to the doctrine that the existence of a highway is a breach of warranty against incumbrances regard it as a mere technical breach, and suggest reformation of the deed so as to except it from the operation of the covenant. Thus in *Butler v. Gale,* 27 Vt. 739, Redfield, C. J., characterizes a claim for damages based on such a breach as "one for a mere technical breach, which the parties must have understood and could not really have intended to indemnify against, with the dry law of the case." With reference to the equitable relief, he observed that "ordinarily a court of equity would readily suppose that the incumbrance of an existing highway, or any other known and notorious right of a similar character, as a right to draw water from a spring, exercised by another at the time of the conveyance, could not have been intended to be indemnified against, and therefore should have been excepted from the operation of the covenant,

and would no doubt require the parties to so treat the deed." To say that an easement constitutes an actionable breach of a covenant and in the same breath that action will on inference obviate such breach by inserting an exception in the covenant is putting theory above common sense, and apparently recognizing a cause of action for the purpose of defeating it. Ordinarily the allowance of damages to a vendee, with full knowledge of the physical conditions evidencing an easement which can not be changed subsequently by the vendor, and which are so apparent that they must have been taken into account in making the transfer, on a breach of warranty against incumbrances immediately upon receiving a deed containing such warranty, is little less than putting a premium on dishonesty, and has been tolerated by the court only because of their inability to avoid the rule excluding parol evidence of prior negotiations when followed by the execution of a written instrument. But this court has recognized the right of recovery where the covenant is broken by the existence of a railroad right of way over the land. *Barlow v. McKinley,* 24 Iowa, 69; *McGowen v. Myers,* 60 Iowa, 256. But happily it declined to extend the rule of these decisions to highways, and, as seen, held that, inasmuch as these exist for the convenient and economic use of the land from which taken, the vendee is conclusively presumed to have taken them into account in making the purchase. Ordinarily the ditch, whether of a drainage district or excavated through the land of joining owners as a private enterprise, is essential to the beneficial use of the land, and is no more likely to prove an injury thereto than a highway. The utility of such drains are universally admitted, and so generally are they regarded as beneficial that few, if any, scriveners in preparing deeds would be more likely to except them from the operation of a covenant against incumbrances than creeks and other streams flowing through the land conveyed. That they have not

been thought to constitute breaches of covenants of this kind is somewhat confirmed by the absence of any adjudications on the subject. The reasoning by which the exclusion of a highway from a covenant against incumbrances is peculiarly persuasive in justification of a like ruling with respect to drainage ditches and tiles,· and we are of opinion that, as the design in excavating' a drainage ditch is the permanent improvement of the land, and this results so uniformly therefrom that injury thereto is exceptional, and, as ordinarily the character of the land is such that but for the drainage afforded thereby the vendee would not have purchased, he should be conclusively presumed to have taken all drains as well as highways into account in acquiring title. This is because essential to the full enjoyment and economic use of the land, and in this respect the existence of drainage ditches, private or public, and tile drains as well as highways, are to be distinguished from those apparent easements which impair rather than enhance the enjoyment, and profitable enjoyment and use of the realty on which they constitute a burden. Though the ditch had not been dug, the public records disclosed that it was ordered and plaintiff knew that the improvement was about to be made. The judgment is *reversed*.

SHERWIN, C. J., dissenting.

DEEMER, J. (dissenting).—I can not agree either to the reasoning or to the conclusion of the majority. The covenant in this case is a general one, and covers all incumbrances of whatsoever kind or character, and insures quiet enjoyment in the purchaser of all the land covered by the deed. Conceding *arguendo* that the covenant of seisin and of further assurance also embraced within the general warranty were not broken, although control and supervision of the land covered by the ditch passed for all time to the board of supervisors of the county (see sections 1989-a21

-a25-a40 of the Code Supplement), yet the majority must agree, I think, that plaintiff has lost the enjoyment of the land which was taken for the large ditch described in the opinion, and his land is burdened by a permanent easement which the jury in this case under proper instructions found was an injury rather than a benefit to the land. It is erroneous to assume that all lands included in a drainage district are benefited by the improvement. Every ditch must have an outlet, and this ditch may be a damage to the land taken. The drainage law itself so indicates, for it provides for the allowance of such damages. See sections 1989-a4-1989-a7. Without provision for such compensation, the law would undoubtedly be unconstitutional. Whether or not lands included within a district are damaged or benefited is to be determined, not as a mere theory or abstraction, but as a fact depending upon the circumstances of each particular case. The law contemplates that lands may be damaged by the establishment of a drainage district, and it is not for the courts to say as a matter of law that all lands included in the district are benefited thereby, as lands are benefited by the establishment of highways. Moreover, the landowner has to pay for all the benefits to his land by assessment made to meet the cost of improvement. Railways are a benefit to all lands, for without means of communication and transportation none of the lands on these our western prairies would be of much value. Yet a railway right of way is almost, if not quite, universally held to be an incumbrance. *Beach v. Miller*, 51 Ill. 206 (2 Am. Rep. 290); *Quick v. Taylor*, 113 Ind. 540 (16 N. E. 588); *Purcel v. Hannibal*, 50 Mo. 504. Our own cases are to the same effect: *Jerald v. Elly*, 51 Iowa, 321; *Barlow v. McKinley*, 24 Iowa, 69; *Van Wagner v. Van Nostrand*, 19 Iowa, 422. Practically every form of easement has been held to be an incumbrance. Without making a complete list of cases so holding, I cite the following: *Ensign v. Colt*, 75 Conn. 111 (52 Atl.

829, 946); *Weiss v. Binnian,* 178 Ill. 241 (52 N. E. 969); *Teague v. Whaley,* 20 Ind. App. 26 (50 N. E. 41); *Smith v. Davis,* 44 Kan. 362 (24 Pac. 428); *Spurr v. Andrew,* 6 Allen (Mass.) 420; *Denman v. Mentz,* 63 N. J. Eq. 613 (52 Atl. 1117); *Huyck v. Andrews,* 113 N. Y. 81 (20 N. E. 581, 3 L. R. A. 789, 10 Am. St. Rep. 432); *Stambaugh v. Smith,* 23 Ohio St. 584; *Edmund's Appeal,* 8 Atl. (Pa.) 31. The rule has been applied to private ways. *Sherwood v. Johnson,* 28 Ind. App. 277 (62 N. E. 645); *Wilson v. Cochran,* 46 Pa. 229; *Russ v. Steele,* 40 Vt. 310; *Butt v. Riffe,* 78 Ky. 352; *Bridger v. Pierson,* 1 Lans. (N. Y.) 481. And the same rule applies to drains and water rights. *Morgan v. Smith,* 11 Ill. 194; *Medler v. Hiatt,* 8 Ind. 171; *Harrington v. Bean,* 89 Me. 470 (36 Atl. 986); *Isele v. Arlington Bank,* 135 Mass. 142; *Clark v. Conroe,* 38 Vt. 469. Even building restrictions have been held to be incumbrances. *Hatcher v. Andrews,* 5 Bush (Ky.) 561; *Locke v. Hale,* 165 Mass. 20 (42 N. E. 331); *Mackey v. Harmon,* 34 Minn. 169 (24 N. W. 702); *Foster v. Foster,* 62 N. H. 46; *Greene v. Creighton,* 7 R. I. 1. See, also, the following authorities bearing upon the same propositions: *Gawtry v. Leland,* 31 N. J. Eq. 385; *Spurr v. Andrews,* 5 Allen (Mass.) 420; *Ginn v. Hancock,* 31 Me. 42; *Smith v. Sprague,* 40 Vt. 43. The last case is closely in point. In no case has it ever been held that an easement such as the one in question is not an incumbrance, and the reason for this no doubt is that the grantee in the deed will be obligated to pay for the benefit received by contributing his part of the expense of the improvement.

There is very decided conflict in the authorities as to whether or not a public highway is an incumbrance. The majority of the cases seem to hold that it is. See cases collected and cited in 11 Cyc., 1115. In *Huyck v. Andrews,* 113 N. Y. 85 (20 N. E. 582, 3 L. R. A. 791, 10 Am. St. Rep. 433), it is said:

The deed entitled her to a perfect title to all the land which it purported to convey, free from any incumbrance thereon; and it is no defense to her action that at the time she took it she knew of some incumbrance or some defect in the title. Proof of such knowledge would be quite important in an action brought by her grantor to re-form the deed, but, as a defense to an action upon the covenants contained in the deed, it is of no importance whatever. That the covenant against incumbrance is broken by an outstanding easement of any kind is perfectly well established by the authorities in this state, and there is no hint in any of them that knowledge by the grantee of the existence of the easement at the time of the conveyance makes any difference. An easement is an interest in land created by grant or agreement, express or implied, which confers a right upon the owner thereof to some profit, benefit, dominion, or lawful use out of or over the estate of another. An incumbrance . . . is said to be 'every right to or interest in the land, to the diminution of the value of the land, but consistent with the passage of the fee by the conveyance' (*Prescott v. Trueman,* 4 Mass. 627 [3 Am. Dec. 246]); and the breach of such a covenant takes place at the instant the conveyance is made. There is in this state one exception to the rule that the existence of an easement constitutes a breach of the convenant against incumbrances, and that is in the case of a highway. It was held in *Whitbeck v. Cook,* 15 Johns. (N. Y.) 483 (8 Am. Dec. 272), that it is not a breach of the covenants that the grantor was lawful owner of the land, was well seised, and had full power to convey, that part of the land was a public highway, and was used as such; and that decision has ever since been regarded as the law in this state. It was based upon the peculiar nature of highway easements, and the general understanding with reference to them. Spencer, J., writing the opinion, said: 'It must strike the mind with surprise that a person who purchases a farm through which a public road runs at the time of purchase, and had so run long before, who must be presumed to have known of the existence of the road, and who chooses to have it included in his purchase, shall turn around on his grantor, and complain that the general covenants in the deed have been broken by the existence of what he saw

when he purchased, and what must have enhanced the value of the farm. It is hazarding little to say that such an attempt is unjust and inequitable and contrary to the universal understanding of both vendors and purchasers. If it could succeed, a floodgate of litigation would be opened, and for many years to come this kind of action would abound. These are serious considerations, and this court ought, if it can consistently with law, to check the attempt in the bud.' These reasons are not applicable to other easements, and the rule of that case has not been applied to any other. While there was not in the deed there under consideration any covenant against incumbrances, yet the *ratio decidendi* is equally applicable to such a covenant; and since that decision it has always been understood in this state that such a covenant is not broken by the existence of a highway. In *McMullin v. Wooley,* 2 Lans. (N. Y.) 394, it was held that the right to take water by means of a pipe ·laid beneath the ground from a spring on the premises conveyed constituted a breach of the covenant against incumbrances. In *Roberts v. Levy,* 3 Abb. Prac. (N. S.) 311, it was held that a covenant entered into between owners of adjoining city lots for themselves and all claiming under them, to the effect that all buildings erected upon the lots should be set back a specified distance from the street on which the lots fronted, constituted an incumbrance upon the lots to which it applied; and if subsequently conveyed by deed containing the usual covenant against incumbrances, a breach of the latter covenant arises the instant the deed is executed. In *Rea v. Minkler,* 5 Lans. (N. Y.) 196, it was held that the existence and use of a private right of way over the granted premises was a breach of warranty; and *Blake v. Everett,* 1 Allen (Mass.) 248; *Russ v. Steele,* 40 Vt. 310, and *Wetherbee v. Bennett,* 2 Allen (Mass.) 428, are to the same effect. . . . In *Mohr v. Parmelee,* 43 N. Y. Super. Ct. 320, a party wall was wholly on one of two contiguous lots of land yet subject to appropriation and use for all the purposes of a party wall, by the proprietor of the other by reason of a prior grant, and it was held that it constituted an incumbrance upon the land on which it stood; that, when a title is incumbered by such an easement, a right of action immediately accrues; and that

whether the covenantee had or had not knowledge or notice of its existence is immaterial, both as regards his right of action and the question of damages. In 2 Greenleaf on Evidence, section 242, it is said: 'A public highway over the land, a claim of dower, a private right of way, a lien by judgment or by mortgage, or any other outstanding elder and better title is an incumbrance, the existence of which is a breach of this covenant. In these and the like cases it is the existence of the incumbrance which constitutes the right of action, irrespective of any knowledge on the part of the grantee, or of any eviction of him.' In 2 Dart on Vendors and Purchasers (6th Ed.) 886, the following language is used: 'Although the fact of the purchaser having notice of the defect can not prevent the covenants for title from extending to it, since extrinsic evidence is inadmissible for the purpose of construing a deed, yet, in an action to rectify the covenant, that fact can be used as the basis of an inference that it could not have been the intention of the parties that the covenant should include a defect of which both parties were aware.' To the same effect are the following authorities: *Beach v. Miller,* 51 Ill. 207 (2 Am. Rep. 290); *Barlow v. McKinley,* 24 Iowa, 70; *Gerald v. Elley,* 45 Iowa, 322; *Butt v. Riffe,* 78 Ky. 352; *Burk v. Hill,* 48 Ind. 52 (17 Am. Rep. 731); *Kellogg v. Malin,* 50 Mo. 496 (11 Am. Rep. 426). In *Mott v. Palmer,* 1 N. Y. 564, the action was to recover damages for breach of the covenant of seisin because the grantor did not at the time of the conveyance own certain fence rails constituting part of a fence; that Bronson, J., writing one of the opinions, said: 'That parol evidence was inadmissible to control the legal effect and operation of the deed is too plain a proposition to be disputed. If the plaintiff had been told at the time that Brown owned the rails, and more, if the rails had been expressly excepted by parol from the operation of the grant and covenant, it would have been no answer to the action. A deed can not be contradicted in its legal effect any more than it can in its terms.'

We have followed the New York rule laid down by the minority of the courts in *Harrison v. Railway Co.,* 91 Iowa, 114. A careful perusal of that case will show that it is

based largely upon reasons of public policy which are in
no manner applicable to this case.   The general rule is
that knowledge on the part of the purchaser of an incum-
brance on the land will not prevent him from recovering
damages on account of it.   See cases collected in 11 Cyc.
1066, 1067, 1068.   Whatever the rule in other states, we
are unalterably committed to the doctrine that knowledge
is no defense.   That I am not mistaken in this will, I
think, appear from a review of our cases.   In *Doyle v.
Emerson,* 145 Iowa, 361, it is said:  "The covenant in the
deed against incumbrances was broken as soon as made,
and it was not material that the grantee had notice of such
incumbrance when he purchased.   *Harwood v. Lee,* 85
Iowa, 622 (52 N. W. 521); *Yancey v. Tatlock,* 93 Iowa,
386."   A railway right of way is an incumbrance.   *Pierce
v. Houghton,* 122 Iowa, 477.   And, of course, the grantee
had knowledge of its existence, but action will lie in his
favor for breach of the covenant of warranty.   See, also,
*Flynn v. Coal Co.,* 72 Iowa, 738.   In the latter case it is
said:  "The conveyance executed by the plaintiff was a
warranty deed, without any reservations or exceptions.
The defendant pleaded as a counterclaim that the plaintiff
had, prior there, conveyed to the Burlington & Missouri
Railroad Company the right of way across said premises
and that such road had been constructed, and was being
operated.   As this was not denied, the facts pleaded must
be deemed true.   The court found and determined that
there was a breach of warranty, and that the defendant
was entitled to recover the damage sustained.   We think
this is corerct.   *Van Wagner v. Van Nostrand,* 19 Iowa,
422; *Barlow v. McKinley,* 24 Iowa, 69; *McGowan v.
Myers,* 60 Iowa, 256.   Under these authorities, the fact
that the defendant had knowledge of the right of way or
incumbrance is immaterial."   In *Gerald v. Elley,* 45 Iowa,
322, it is said, with reference to this question:  "Conced-
ing that the plaintiff knew of the incumbrance, and that he

traded his farm for that of the defendant, this would not make the legal effect of such a contract in any wise different from what it would be if the plaintiff had paid $5,000 in cash. The question is, Did these parties contemplate the incumbrance and contract, or agree that it should be excepted from the operation of the covenants? We feel constrained to say that under the allegations in the answer and the evidence we are compelled to answer this question in the negative. There is nothing different shown in the testimony from the very common case where a party sells and conveys land on which there is located a railway, the existence of which was known to the other party, and the premises are conveyed with the usual covenants without excepting such incumbrance therefrom. In such case there can be no relief because of the grantor's negligence, or his want of legal knowledge. There is no mistake of fact in such case." See, also, *Kostendader v. Pierce,* 37 Iowa, 645. In *McGowan v. Myers,* 60 Iowa, 259, it is said:

It is contended that the defendant should have been allowed to show upon the trial that the plaintiff knew, when he purchased the property, that the stairway was used in common, and that he purchased with reference to that fact. It is said this knowledge is no defense to the action, either partial or otherwise. See *Van Wagner v. Van Nostrand,* 19 Iowa, 422; *Barlow v. McKinley,* 24 Iowa, 69. In the first case cited, where the alleged breach of covenant consisted in the removal of a stable from the land by a tenant who had the right of removal, it is said that: 'According to the weight of authority, it is no less a breach, if it be assumed that the plaintiff, or covenantee, knew at the time of the conveyance that the stable was the property of the tenant, and that the latter had the right of removal.' It is not to be denied that there are cases holding the contrary doctrine. Appellant cites *Leland v. Stone,* 10 Mass. 459, a case where the grantor conveyed certain parcels of land, including one parcel which he had before conveyed to his son. In an action upon a breach of covenant, the jury gave nominal damages only, on the ground that the

parcel so conveyed to the son had been inserted in the deed to the plaintiff by mistake; and the verdict was approved. If we understand the opinion in the case, it was thought the jury were authorized as chancellors to reform the deed and correct the mistake. *Kutz v. McCune,* 22 Wis. 628 (99 Am. Dec. 85), cited by appellant, was a case where damages were claimed for a breach of covenant because of an easement, which consisted of the right to back water on a part of the land by a milldam. It was held that no right of action would lie, because the easement obviously and notoriously affected the physical condition of the land at the time of the conveyance and therefore was not embraced in a general covenant against incumbrances. This court, as we have seen, has held the contrary doctrine. In the case of *Barlow v. McKinley, supra,* the Rock Island Railroad was completed and in full operation upon the land at the time the conveyance was made, and it was held that it was an incumbrance, and that the easement was a breach of the covenants in the deed, although the grantee had full knowledge of the existence of the incumbrance at the time he accepted the covenant. We think this is the better rule, and adhere to the decisions made by this court. Any other holding would in our view be an invasion of the elementary rule that exceptions and reservations can not be ingrafted by parol upon the deed.

In *Barlow v. McKinley,* 24 Iowa, 69, it is said:

(1) Is the right of way for a railroad an incumbrance? An incumbrance is defined to be a right in a third person in the land in question, to the diminution of the value of the land, though consistent with the passing of the fee by the deed of conveyance. Bouvier Law Dictionary. A public highway is held to be an incumbrance in all the New England states. Rawle on Covenants for Title, 115-120, and authorities cited in the notes. As to the right of way for a railroad being an incumbrance, see opinion of Redfield, J., in *Butler v. Gale,* 27 Vt. 742, and see the same case as to remedy for covenantor when such incumbrance was considered and allowed for in the sale, etc. Whether a public highway is an incumbrance in this state we need not now decide; but upon both prin-

ciple and authority we hold that a right of way for a railroad is an incumbrance.

(2)    Can a party recover upon a covenant against incumbrances when he had full knowledge of the existence of the incumbrance at the time he accepted the covenant? This point was decided in the affirmative by this court in *Van Wagner v. Van Nostrand,* 19 Iowa, 422, following the weight of authority. See the cases there cited. With that decision we are still content.

In *Van Wagner v. Van Nostrand,* 19 Iowa, 422, it is said:

> And, according to the weight of authority, it is no less a breach if it be assumed that the plaintiff or covenantee knew at the time of the conveyance that the stable was the property of the tenant, and that the latter had the right of removal; for in an action by covenant the deed governs; and in such an action, by grantee against grantor, the latter can not, in order to defeat the operation of the covenant, establish by parol the grantee's knowledge of an incumbrance or defect in the title or by parol ingraft upon the deed exceptions and reservations not therein mentioned. *Wickersham v. Orr,* 9 Iowa, 253; *Harlow v. Thomas* (strong case), 15 Pick. 66 (1833), approving *Townsend v. Weld,* 8 Mass. 146 (1811); *Mott v. Palmer,* 1 N. Y. 574, per Bronson, J.; *Collingwood v. Irwin,* 3 Watts (Pa.) 306 (1834); 1 Greenleaf Evidence, section 275; 2 Cow. & H. notes, Philips Evidence, 467. And see other authorities cited, and question discussed by Rawle on Covenants, 149-154. If the deed, by accident or mistake, did not embrace the contract of the parties, if it was intended by the parties to have excepted the lease and right of the tenant, equity, on this being satisfactorily established, would correct and reform the conveyances. The defendant did not seek relief or redress in this manner.

The distinction attempted to be made by the majority between incumbrances which do, and those which do not, affect the physical condition of the property, has been repudiated by us in many of the cases heretofore cited. See in this connection *Flynn v. White Breast Co.,* 72 Iowa,

738; *Gerald v. Elley,* 45 Iowa, 322; *Barlow v. McKinley,* 24 Iowa, 69; and the other cases from which quotations have been made.

To my mind it is entirely immaterial that defendant did not file any claim for damages. One reason for this doubtless was that he got full value for his land without the burden of the easement and cared not to make a claim, concluding to take his chances upon litigation. No one suggests that plaintiff ever had any right to file a claim for damages in the drainage proceedings. If defendant did not see fit to do so, this should not prejudice the plaintiff. A jury upon proper testimony found that plaintiff's land was damaged by the construction of the large ditch, and it is not for us to say that, no matter what the testimony, theoretically there was no damage, and no recovery can be had. On principle and authority I believe the majority are wrong in their conclusion and especially in the reasoning by which it is reached.

The case is controlled by our previous decisions, and I would affirm.