WILLIAM GREINER, Appellee, v. CLINTON J. SWARTZ, Appellant.

**Reformation of instruments:** EVIDENCE. In this action to recover the amount of a drainage tax paid by the purchaser of land it appeared that the tax had been levied but not spread upon the records when the contract of sale was made, and that the contract provided that the vendor should satisfy the lien upon the premises now existing or by reason of the drainage tax that had been assessed, and that

such was the mutual understanding. *Held,* sufficient to authorize reformation of the contract if necessary to enable the purchaser *to recover of the vendor the amount of such assessment paid by him.*

**Drainage taxes:** VENDOR AND PURCHASER: RIGHTS AND LIABILITIES. 2 The resolution of the boards of supervisors in joint session levying a drainage tax for a district extending into two or more counties creates a lien upon the land against which the tax is assessed; and although not collectible until spread upon the collector's books of the particular county, as between the owner of land and his vendee it is an enforceable charge against the owner, when paid by the purchaser under a contract providing that the vendor shall satisfy the drainage tax now on or that has been assessed in the district.

**Same.** The fact that an abstract of title to land failed to disclose a 3 tax lien would not serve as notice to the purchaser of land that the owner intended to repudiate his contract to discharge the same.

**Reformation of instruments:** PAROL EVIDENCE. The rule that parol 4 evidence cannot be invoked to vary the terms of a written contract has no application to prevent proof of a mistake, or to reform an instrument to correct the mistake.

*Appeal from Story District Court.*—HON. CHAS. E. ALBROOK, Judge.

SATURDAY, NOVEMBER 28, 1914.

THE opinion states the nature of the case and the material facts.—*Affirmed.*

*Bert B. Welty,* for appellant.

*E. H. Addison,* for appellee.

WEAVER, J.—Through the agency of one McCoy, defendant entered into oral negotiation for the sale of a forty-acre tract of land to the plaintiff. Prior to this time a drainage district including the land in question had been established by the joint action of the boards of supervisors of Marshall

county and Story county, and an assessment of benefits
thereon had been levied and paid, after which further pro-
ceedings had been had by the joint action of said boards for
a second or further levy upon the lands in the district of an
amount equal to 51 per cent. of the first levy. The action
here referred to was taken by said boards on November 14,
1910, by the adoption of a resolution in which, after a pre-
amble reciting that the first levy had proved insufficient to
complete the improvement, it was resolved:

That there be levied against all the lands within said
district a second assessment and that the ratio of said second
assessment shall be 51 per cent. of the amount of the first
assessment.

The negotiations between the parties to this suit for the
sale and purchase of the land in question continued for a con-
siderable period of time without any definite agreement being
arrived at until February 15, 1912. The evidence fairly tends
to show that the principal reason why the matter was not
sooner closed was the plaintiff's insistence that, if he took the
land at defendant's price of $140 per acre, the defendant
should pay the drainage assessment. As to what took place
when the contract was finally executed there is some dispute.
The agreement, as reduced to writing and executed by the
parties, provides for the sale of the land at $140 per acre, to
be consummated by proper settlement and conveyance on
March 1, 1912. This contract contains a provision or clause
reading as follows:

First party (Swartz) hereby agrees to satisfy or have
released the lien on said premises that is now on by reason of
the drainage tax that has been assessed in the Marshall-Story
drainage district No. 1 thereon, but shall not be obliged to do
so until at some date subsequent to March 1, 1912.

It appears, however, that notwithstanding the joint action
of the boards of supervisors above set forth providing for

the additional assessment of 51 per cent., the board of supervisors of Story county, in which this tract of land is situated, did not formally proceed to make and enter upon its records a levy of the assessment or tax thus provided for by the joint boards until March 8, 1912, which was after the contract between plaintiff and defendant had been consummated by proper conveyance. Thereafter, defendant having refused to pay the assessment thus made, it was paid by the plaintiff, who brings this action to recover the amount so expended in relieving the land from the burden so imposed. The action was begun and tried as a suit in equity, alleging the agreement between the parties to have been that defendant would pay whatever tax the land was or should become liable for in the drainage proceedings then pending, and that the clause which we have quoted from the contract was made in that form because of the mutual mistake of the parties in believing and understanding that said assessment of 51 per cent. had actually been levied prior to the date of said contract, and upon this ground the plaintiff asked that the written contract be reformed and made to express the actual agreement of the parties, and that he have judgment thereon for the amount of the tax paid by him. The defendant in answer admits that he agreed to pay all taxes and drainage assessments, if any, that were made, levied or assessed on the land prior to March 1, 1912, but that all charges, liens, or assessments made or levied after that date were to follow the land and be paid by the purchaser. He further admits that at the time the contract was made that he knew or had heard of the additional or second assessment by the joint boards, but says that he undertook to pay the same only in the event that the same was levied before March 1, 1912. He denies that any mistake was made in drawing the contract, but admits that he at that time supposed or was "under the impression" that the levy of this assessment had then been made. He further pleads that before March 1, 1912, he furnished plaintiff an abstract of title to the land, which abstract showed no assessment of

said tax appearing upon the books of the county treasurer, and that, with the knowledge thus imparted, plaintiff on March 1st settled with the defendant on the basis of the contract as reduced to writing, and is now estopped to assert the claim made in this action. It is also pleaded that the assessment did not become a lien upon the land until after the sale and conveyance were complete, and defendant is therefore in no manner liable for its payment. The trial court found plaintiff entitled to the relief prayed, and defendant appeals.

The foregoing somewhat minute statement of facts renders any extended discussion of the record unnecessary. The conclusion reached by the trial court is clearly correct. Plain-

1. REFORMATION OF INSTRUMENTS: evidence.

tiff's version of the agreement is supported not only by his own testimony, but by the strongly corroborating testimony of McCoy, the agent who represented defendant in the transaction. It is also corroborated in no small degree by the answer and by the testimony of the defendant himself. He admits that when he made the contract he was "under the impression" that the tax had then been levied, and testifies that at the time the contract was made he told plaintiff that (quoting):

As I understood it, the assessment had been made and under the agreement that I had adhered to all the way through it would be up to me to pay.

It is true defendant insists that he at all times understood and qualified all his promises to pay with the condition that he would not be liable for any tax or assessment made after March 1, 1912, but there is scarcely any room to doubt by any impartial reader of the record that the contract of February 15, 1912, was entered into with the mutual understanding that the assessment, the amount of which had long before been fixed and determined by the joint boards of supervisors, was a valid existing charge upon the land, and that defendant should pay it. The showing for a reformation of

the writing was therefore ample, if any reformation was necessary to enable plaintiff to recover.

It is, however, quite doubtful whether any equitable remedy was needed in order to sustain a recovery. The boards of supervisors in joint session had jurisdiction to make the assessment. See Code Supp. 1907, section 1989-a32.

2. DRAINAGE TAXES: vendor and purchaser: rights and liabilities.
By this statute it is provided that, after the proper commission has made its report of the cost and expense of the work done or to be done, the several boards shall meet in joint session to consider such report. · Upon such consideration it becomes the duty of the joint session to apportion and finally determine "the amount to be assessed and levied against the several parcels or tracts of land," after which it is the duty of the several boards acting separately and within their own counties to "proceed to levy and collect the taxes thus apportioned." The words "assessed and levied" have no one fixed and invariable or technical meaning. As here used, there is no assessment whatever in the sense of fixing a valuation of the property on which a tax is to be imposed. An assessment for a public improvement of the kind here under consideration is the ascertainment of the cost to be provided for and the apportioning of the same upon the several parcels of land. This being done, it only remains for the proper officers to proceed with the administrative or ministerial duty of making the records and book entries upon which the officer charged with the collection of the tax may perform his functions in that respect. In this case we have seen the joint boards of supervisors did ascertain the cost of the drainage system, and did make the distribution or assessment thereof upon the several tracts of land. The board of supervisors of Story county in separate session could not vacate, enlarge, or diminish the assessment so made on this or any other tract in the district. Its authority in the premises was limited to such action as might be appropriate or necessary to give effect to the assessment and levy ordered by the joint session and provide for such record as would enable the

county treasurer to proceed with the collection. In other words, the resolution of the joint session in November, 1911, effected such an assessment or levy as bound the land for the payment of a fixed and ascertained sum, and of this fact the owner, as well as the subsequent purchaser, was bound to take notice, and this, we are disposed to say, was what the parties must have had in mind when speaking of an assessment and levy. They seem to have used the words "assessment" and "levy" interchangeably, as, indeed, do both client and counsel throughout the record. While the tax may not have been collectible until spread upon the book of the collector by order of the local board, it was none the less a charge upon the land. The very terms of that part of the written contract on which defendant relies make no reference to the "levy" of the tax. What defendant there undertakes to do is to relieve the land "of the drainage tax that has been assessed in the Marshall-Story drainage district No. 1." This could have no reference to anything else than the act of the joint boards providing for an assessment equal to 51 per cent. of the first assessment. No other assessment had been attempted, and no other is shown to have been in contemplation. In other words, the tax had been assessed, fixed, and determined by the only authority competent so to do. Nothing was lacking except the ministerial act or routine by which the tax so assessed was to be made ready for collection. We could therefore accept the defendant's contention that there was no mistake in reducing the contract to writing without justifying any other result than was reached by the trial court. Quite in point, see *Stuhr v. Butterfield*, 151 Iowa, 736.

There is nothing in defendant's plea of estoppel. The fact that the abstract of title did not disclose the existence of a tax lien could not serve as notice to the plaintiff that

3. SAME.

defendant would repudiate his obligation to remove a tax which confessedly had been assessed some three months before the contract was entered into.

Nor will it avail the defendant to invoke the rule which excludes parol evidence to vary or contradict a written agreement. That rule has no application to prevent the proof of mistake or the reformation of a contract for its correction. Moreover, as we view the effect of the writing, the parol evidence objected to neither contradicts nor varies the effect of the written agreement.

4. REFORMATION OF INSTRUMENTS : parol evidence.

For the reasons stated, the appeal cannot be sustained, and the decree below is—*Affirmed*.

LADD, C. J., and EVANS and PRESTON, JJ., concur.